No. 25-10453-G

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

MARITZA REYES,

Plaintiff-Appellant

v.

FLORIDA A&M
UNIVERSITY BOARD
OF TRUSTEES ("FAMU")

Defendant-Appellee

Appeal from the United States District Court
for the Middle District of Florida

No. 6:22-cv-1525-WWB-DCI

---

APPELLANT'S OPENING BRIEF

---

Maritza Reyes, *Pro Se*
P.O. Box 5102
Winter Park, FL 32793
mreyesclaim@gmail.com
305-308-8200

*Reyes v. FAMU*, Case No. 25-10453-G

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rules 26.1-2, 26.1-3, and 28-1(b) of the Eleventh Circuit Rules, the undersigned Plaintiff-Appellant certifies that the following listed persons and entities have an interest in the outcome of this case:

### Judges

- Berger, the Honorable Wendy W., U.S. District Court Judge for the Middle District of Florida

- Hoffman Price, Leslie, U.S. District Court Magistrate Judge for the Middle District of Florida

- Irick, Daniel C., U.S. District Court Magistrate Judge for the Middle District of Florida

- Kidd, Embry J., U.S. Circuit Judge, United States Court of Appeals Eleventh Circuit (former U.S. District Court Magistrate Judge for the Middle District of Florida)

### Appellee-Defendant's Attorneys

- Coates, Kentayvia L., Esq., Associate General Counsel and Director of Labor Relations, FAMU

*Reyes v. FAMU*, Case No. 25-10453-G

- Elijah, Iris A., Esq., Deputy General Counsel, FAMU

- Espino Wydler, Lourdes, Esq., Wydler Law

- Hatcher-Bolin, Kristie, Esq., GrayRobinson, P.A.

- Mitchell, Richard ("Rick") E., Esq., GrayRobinson, P.A.

- Reiner, Sarah P. L., Esq., GrayRobinson, P.A.

- Santoro, Maria, A., Esq., Sniffen & Spellman, P.A.

- Spradley, Susan T., Esq., GrayRobinson, P.A.

- Thomas, Shira, R., Esq., Interim Vice President and General Counsel/Chief Policy Officer, FAMU

- Wallace, Doris Denise, Esq., Former Vice President and General Counsel/Chief Policy Officer, FAMU

- Ward, Teresa Cooper, Esq., Sniffen & Spellman, P.A.

- Zolty, Julie M., Esq., GrayRobinson, P.A.

**FAMU Board of Trustees**

- Brown, Jamal A., Ph.D., Faculty Senate President

- Cavazos, Ann Marie, Professor of Law (former Trustee)

- Cliatt, II, Ottis (former Trustee)

- Crossman, John

- Ellison, Earnie

- Figgers, Natlie G.

- Gainey, Emery A.

- Gibbons, Deveron

- Harper, Kristin

- Lawson, Kelvin

- May, Loryn

- Perry, Jr., Belvin

- Reed, Craig

- Stone, Kenward ("Kenny") (former Trustee)

- Washington, TaShaunda ("Nicole")

- White, Michael

## **Other FAMU Employees (including former employees)**

- Abrams, Robert ("Rob"), Professor of Law

- Boothe-Perry, Nicola ("Nicky"), A., Former Professor of Law

- Broussard, Patricia ("Pat"), Professor of Law

- Calhoun, Rica, Chief Compliance and Ethics Officer

- Chin, Andrew, D., Associate Professor, Dean of the School of Architecture + Engineering Technology (SAET)

- Cooper, Markita, Professor of Law

- Edington, Maurice, D., Former Provost, FAMU

- Fineman, Jonathan, Associate Professor of Law

- Gavin, Carrie, Former Director, Office of Equal Opportunity and Labor Relations

- Graham, Mildred, Advancement/Alumni Affairs

- Green, Reginald, M., Associate Dean for Student Services and Administration

- Griffin, Ronald ("Ron"), Professor of Law

- Henslee, William ("Bill"), Professor of Law

- Howard, Cecil, Associate Provost for Academic Programs and Interim Dean of the College of Law

- Jones, Darryll, Professor of Law

- Keller, Deidre, Former Dean College of Law

- Langston, Lundy, Professor of Law

- Levitt, Jeremy, Professor of Law

- Maleszewski, Joseph, Vice President for Audit

- Pernell, LeRoy, Former Dean

- Perry, Reginald J., Associate Provost for Academic and Faculty Affairs

- Reaves, Rhonda, Professor of Law

- Robinson, Larry, Former President

- Saleem, Omar, Professor of Law

- Scott, Latrecha K., Director of Office of Equal Opportunity Programs & Labor

Relations/Title IX

- Smith, Jennifer, Former Professor of Law

- Snyder, Adrienne, Chief of Staff

- Taite, Phyllis, Former Professor of Law

- Watson Allyson, Provost and Vice President for Academic Affairs

- Wesson, Dale G., Interim Dean, College of Agriculture and Food Sciences

**Entities**

- Florida Agricultural and Mechanical University ("Florida A&M University"
or "FAMU")

- GrayRobinson P.A.

- Sniffen & Spellman, P.A.

- Wydler Law

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 26.1-3</u>

I hereby certify that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ *Maritza Reyes*
Maritza Reyes, Esq., *Pro Se*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Maritza Reyes respectfully requests oral argument. This case is fact-intensive, including as to the procedural record (the parties' filings and the orders) in the court below. Oral argument should be heard because it will substantially assist the Court to reach a just resolution in this case.

## REFERENCES TO THE RECORD

In this Brief of Plaintiff-Appellant, citations in the format (Doc. # at #) shall refer to document number and page number(s) of materials filed on the Case Docket for Case No. 6:22-cv-01525-WWB-DCI in the United States District Court for the Middle District of Florida. Some citations will also include a paragraph number when applicable (Doc. # at #, ¶#).

Two hearing transcripts were filed in the case at docket entry numbers 140 and 146.[1] Citation to the transcripts of hearings will be to the docket entry number of the transcript at page number:line number or numbers, e.g., (Doc. # at #:#), (Doc. # at #:#-#).

---

[1] The transcript at docket entry number 140 is for a hearing held on June 18, 2024, on Plaintiff's Expedited Short-Form Discovery Motion for Extension of Discovery Deadline and Dispositive and *Daubert* Motions Deadline if Necessary (Doc. 51). The transcript at docket entry number 146 is for a hearing held on May 13, 2024, on Defendant's Time-Sensitive Motion for Protective Order Precluding the Deposition of Dr. Larry Robinson (Doc. 37).

i

The document number for all the depositions (with exhibits) is the same (Doc. 86) because they were filed in the courthouse in a USB drive due to their large size. (Doc. 86).[2] These are the abbreviations for the deposition transcripts: Plaintiff Maritza Reyes – PL (PL stands for Plaintiff); President Larry Robinson – LR; Professor LeRoy Pernell – LP; and Professor Patricia ("Pat") Broussard – PB. The citations for the deposition transcripts include page and line numbers for single and multiple pages and lines with a dash for a range of pages or lines and semicolons to divide pages, e.g., PL(page#:line#), PL(page#:line#; page#:line#-page# line#), PL(page#:line#-page#), or PL(page#-page#). Citations to exhibits that were introduced during each deposition are as follows: PL(Ex. #) or PL(Ex. # at page#).

---

[2] Plaintiff-Appellant contacted the Clerk's Office in the U.S. District Court for the Middle District of Florida to ascertain the procedure to forward the USB drive to the Eleventh Circuit Court of Appeals. The Clerk's Office responded that the Clerk in the Eleventh Circuit will request it. Plaintiff-Appellant contacted the Clerk's Office in the Eleventh Circuit, and they confirmed that they will request it once briefing is complete.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP) .....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT...............................i

REFERENCES TO THE RECORD ........................................................ i

TABLE OF CONTENTS ....................................................................... iii

TABLE OF CITATIONS.........................................................................v

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION .......1

STATEMENT OF THE ISSUES ..............................................................2

STATEMENT OF THE CASE..................................................................3

   I.   COURSE OF PROCEEDINGS AND DISPOSITIONS IN DISTRICT COURT ......................................................................................3

   II.  STATEMENT OF THE FACTS .................................................22

   III. STATEMENT OF THE STANDARDS OF REVIEW ..................43

SUMMARY OF THE ARGUMENT ......................................................45

ARGUMENT AND CITATIONS OF AUTHORITY .............................46

   I.   The district court erred in granting summary judgment in favor of FAMU on all counts of Professor Reyes's Title VII causes of action, where Professor Reyes had record evidence to show genuine dispute as to material facts that would allow reasonable jurors to find by a preponderance of the evidence that FAMU discriminated and retaliated against her, but the district court did not allow her to cite to her evidence. .............................................................46

   II.  The district court abused its discretion when it denied Professor Reyes's request to replace her Response in Opposition to FAMU's Motion for Summary Judgment with a Corrected Response and Declaration with citations to the record and affidavits.......................................................................52

   III. The district court abused its discretion when it denied Professor Reyes's request to re-open discovery and summary judgment after FAMU filed its answer with thirteen affirmative defenses once the discovery deadline and the deadline to submit motions for summary judgment passed. ...................................................56

CONCLUSION ....................................................................................59

CERTIFICATE OF COMPLIANCE ........................................................................60

CERTIFICATE OF SERVICE ...............................................................................60

# TABLE OF CITATIONS

**Cases**

*Arch Specialty Ins. Co. v. BP Inv. Partners, LLC*, No. 6:18-cv-1149-WWB-DCI, 2020 U.S. Dist. LEXIS 171764 (M.D. Fla. April 1, 2020)............................ 54, 55

*Baxter v. Santiago-Miranda*, 121 F.4th 873 (11th Cir. 2024). .................................44

*Bent v. Riley*, No. 6:21-cv-75-WWB-EJK, 2022 U.S. Dist. LEXIS 167844 (M.D. Fla. Sept. 16, 2022). ...............................................................................................55

*Burger King Corp. v. Weaver*, 169 F.3d 1310 (11th Cir. 1999). ..............................45

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997). ............. 45, 56

*Glover v. City of Pensacola*, 372 Fed. Appx. 952, 955-56 (11th Cir. 2010)..........56

*Godoy v. Office of Bar Admissions*, No. 1:05-CV-0675-RWS, 2006 U.S. Dist. LEXIS 50654 (N.D. Ga. July 25, 2006) ...............................................................54

*Perez v. Wells Fargo N.A.*, 774 F.3d 1329 (11th Cir. 2014). ....................................54

*Sanders v. University of Idaho College of Law*, No. 1:19-CV-00225-BLW (D. Idaho Nov. 10, 2021) ............................................................................................3

*State Farm Mutual Auto. Ins. Co. v. Complete Care Ctrs., LLC*, No. 6:20-cv-1240-WWB-EJK (M.D. Fla. 2020). ....................................................................57

*United States v. McCutcheon*, 86 F.3d 187 (11th Cir. 1996)....................................45

*Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) ........3

**Statutes**

28 U.S.C. § 1291. ................................................................................1

28 U.S.C. § 1331 ................................................................................1

42 U.S.C. § 1983 ..............................................................................48

42 U.S.C. § 2000e, *et seq*. ...............................................................1

Fla. Stat. § 760.01, *et seq*. .............................................................48

**Rules**

Fed. R. Civ. P. 56(a). ......................................................................45

Fed. R. Civ. P. 8(b). ........................................................................59

**Other Authorities**

ANITA BERNSTEIN, THE COMMON LAW INSIDE THE FEMALE BODY 203 (2019). .......48

Devoun Cetoute, *Gov. DeSantis declares state of emergency as coming heavy rains might cause 'major disaster,'* THE MIAMI HERALD (AUG. 1, 2024) ......................8

Maritza I. Reyes, *Symposium on Anita Bernstein's The Common Law Inside the Female Body: The Female Body in the Workplace: Judges and the Common Law*, 114 NW. U. L. REV. ONLINE 177 (2019). ............................................................48

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Plaintiff-Appellant Maritza Reyes ("Professor Reyes") invoked original jurisdiction in the United States District Court for the Middle District of Florida ("district court") under the provisions of 28 U.S.C. § 1331. She brought suit for violations of Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. § 2000e, *et seq.* ("Title VII"). (Doc. 34 at 1, ¶¶ 1, 8-10).

On January 10, 2025, the district court granted Defendant's Motion for Summary Final Judgment on all counts of Plaintiff's Second Amended Complaint. (Doc. 153). On January 13, 2025, the clerk's office entered Judgment in a Civil Case for Defendant. (Doc. 154). On February 10, 2025, Plaintiff filed a timely Notice of Appeal. (Doc. 157). This Court has appellate jurisdiction. 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

**I.**     Whether the district court erred in granting summary judgment in favor of FAMU on all counts of Professor Reyes's Title VII causes of action, where Professor Reyes had record evidence to show genuine dispute as to material facts that would allow reasonable jurors to find by a preponderance of the evidence that FAMU discriminated and retaliated against her, but the district court did not allow her to cite to her evidence.

**II.**     Whether the district court erred when it denied Professor Reyes's request to replace her Response in Opposition to FAMU's Motion for Summary Judgment with a Corrected Response and Declaration with citations to the record and affidavits.

**III.**     Whether the district court erred when it denied Professor Reyes's request to re-open discovery and summary judgment after FAMU filed its answer with thirteen affirmative defenses once the discovery deadline and the deadline to submit motions for summary judgment passed.

## STATEMENT OF THE CASE

## I.    COURSE OF PROCEEDINGS AND DISPOSITIONS IN DISTRICT COURT

**The Start of the Lawsuit and the "Shotgun Pleading" Dismissals**

Professor Reyes filed her Complaint on August 25, 2022. (Doc. 1). On September 1, 2022, the Court *sua sponte* dismissed the Complaint because it found that it "[fell] into the first and third categories" of shotgun pleadings defined by the Eleventh Circuit in *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). (Doc. 8 at 2).[3]

On September 12, 2022, Plaintiff timely filed her Amended Complaint and cured the deficiencies stated by the Court in its *sua sponte* order. (Doc. 10). On January 20, 2023, Defendant filed an "Opposed Motion to Dismiss Plaintiff's Amended Complaint as a Shotgun Pleading and to Strike Immaterial Allegations, and Alternative Motion for More Definite Statement." (Doc. 22). On February 13, 2023, Professor Reyes filed her response seeking denial of Defendant's motions and respectfully requesting, in the alternative, leave of court to file an amended pleading. (Doc. 28). On September 15, 2023, the Court granted in part Defendant's Motion to

---

[3] Professor Reyes explained to the court that she reviewed sample complaints for these types of cases and patterned the counts in her Complaint after a Fourth Amended Complaint filed by law professor Shaakirrah R. Sanders, a Black woman, for similar causes of action against her law school employer. *Sanders v. University of Idaho College of Law*, No. 1:19-CV-00225-BLW (D. Idaho Nov. 10, 2021) (Doc. 99). (Doc. 36 at 2 n.2).

Dismiss and gave Professor Reyes until September 29, 2023, to file an amended pleading. (Doc. 30 at 5-6). The second time, the Court dismissed Plaintiff's pleading pursuant to the second category of "shotgun pleadings" stated in *Weiland*. (Doc. 30 at 5).

On October 9, 2023, Plaintiff filed her Second Amended Complaint. (Doc. 34). On October 23, 2023, Defendant filed a Motion to Dismiss Plaintiff's Second Amended Complaint with Prejudice or in the Alternative Motion to Strike ("Second Motion to Dismiss"). (Doc. 35). On November 13, 2023, Plaintiff filed her Response in Opposition to Defendant's Second Motion to Dismiss her Second Amended Complaint. (Doc. 36).

## **Discovery**

Professor Reyes began communicating with FAMU's counsel about scheduling President Larry Robinson's deposition since on or about the first week of March 2024. (Doc. 50 at 1, ¶1). After Professor Reyes's efforts to get a date for President Robinson's deposition were unsuccessful, on May 1, 2024, Professor Reyes noticed President Robinson for deposition on May 17, 2024 (Doc. 37-1). (Doc. 50 at 1, ¶2).

On May 7, 2024, FAMU filed a Time-Sensitive Motion for Protective Order Precluding the Deposition of Dr. Larry Robinson (Doc. 37) ("Motion for Protective Order") (Doc. 50 at 1, ¶3). On May 8, 2024, the Court scheduled the Motion for Protective Order for an expedited hearing which was held on May 13, 2024. (Docs.

4

38 & 40). At that hearing, the Court gave Professor Reyes the allotted time to submit a response and instructed Professor Reyes and FAMU's counsel to secure alternative dates for the deposition should the Court deny the Motion. (Doc. 50 at 2, ¶4); (Doc. 146 at 18:12-14).

On May 21, 2024, Professor Reyes filed a Response to the Motion for Protective Order. (Doc. 45). On May 24, 2024, the Court issued an Order denying the Motion for Protective Order and stating that President Robinson's "deposition should go forward." (Doc. 49 at 6). On May 28, 2024, immediately after the Memorial Day weekend, Professor Reyes reached out to FAMU's counsel to confer regarding the scheduling of pending depositions, including specifically President Robinson's deposition. Professor Reyes requested that the parties agree to request an extension of the discovery deadline for sixty (60) days or until FAMU made its administrators available for the pending depositions. (Doc. 50 at 2, ¶9).

On May 29, 2024, FAMU's counsel responded and informed Professor Reyes that FAMU did not agree to extend the discovery deadline for sixty (60) days or for the time required to conduct the pending depositions, including President Robinson's deposition. In light of this refusal, Professor Reyes then conferred with FAMU's counsel about a Motion to Compel President Robinson's deposition and was unable to get FAMU's counsel to agree to an extension of time to conduct President

Robinson's deposition without court intervention. (Doc. 50 at 2-3, ¶10) (citing Exhibit "2" - Composite of Emails from 5/28/24 to 5/29/24).

On June 13, 2024, the court ordered that President Robinson's deposition must proceed in person in Orlando, Florida on or before June 26, 2024. (Doc. 64). The court did not award Professor Reyes reasonable expenses, including attorney fees, incurred in making her Motion to Compel. (Doc. 64).

## Motion to Extend Discovery Deadline and Dispositive and *Daubert* Motions Deadline if Necessary

On May 31, 2024, Professor Reyes filed Plaintiff's Expedited Short-Form Discovery Motion for Extension of Discovery Deadline and Dispositive *Daubert* Motions Deadline if Necessary. (Doc. 51). She sought a sixty-day extension of the discovery deadline to try to secure an attorney and, alternatively, to complete the pending depositions of FAMU's employee administrators, including President Larry Robinson, who had not been made available for deposition despite the Court's Order denying Defendant's Motion for Protective Order. (Doc. 49 at 101-02, ¶2). Plaintiff's Motion to Compel President Robinson's deposition was pending. (Doc. 50). Professor Reyes also explained that the parties would "need time to obtain transcripts for purposes of the dispositive and *Daubert* motions, which mean[t] that an extension of the current July 2, 2024 for these motions w[ould] be necessary. However, additional deadlines may not need to be altered." (Doc. 51 at 2, ¶3). Professor Reyes's Motion was the first time she sought an extension of the CMSO

deadlines, and she filed her motion before the expiration of the discovery, *Daubert* motions and dispositive motions deadline." (Docs. 26; 51 at 2). FAMU opposed the Motion. (Doc. 55). On June 20, 2024, the court denied the Motion. (Doc. 72).

**Motion for Summary Judgment**

On July 2, 2024, Defendant filed its Motion for Summary Final Judgment and Incorporated Memorandum of Law ("Motion for Summary Judgment"). (Doc. 76).

**Professor Reyes's Requests for Extensions of Time & Timely Filing of Record Evidence**

On July 17, 2024, Professor Reyes filed a Time-Sensitive Unopposed Motion for Extension of Time to Respond to Defendant's *Daubert* Motion and Motion for Summary Judgment. (Doc. 79). Professor Reyes requested an extension of seven (7) days to respond to Defendant's Motion for Summary Judgment due to an unexpected medical emergency regarding her mother and the additional duties as her mother's sole caregiver. (*Id.* at 1). On July 19, 2024, the Court granted the Motion and gave Professor Reyes until July 29, 2024 to respond to Defendant's *Daubert* Motion (Doc. 74) and until August 8, 2024 to respond to Defendant's Motion for Summary Judgment (Doc. 76). (Doc. 80). On July 29, 2024, Professor Reyes filed her Response in Opposition to Defendant's *Daubert* Motion to Exclude Opinions of Plaintiff's Expert Kenneth Westhues, Ph.D. (Doc. 81).

On August 2, 2024, Professor Reyes filed a Time-Sensitive Unopposed Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment.

(Doc. 82). In her Motion, Professor Reyes explained that she had to take her mother to South Florida to receive additional medical care. (*Id.* at 2, ¶3). Professor Reyes also explained that, while in South Florida, both she and her mother contracted COVID for the first time since the pandemic began "and were both dealing with medical issues due to COVID." (*Id.*). She also explained that, the day prior, on "August 1, 2024, Governor Ron DeSantis declared a state of emergency in several counties, including Central and South Florida, due to an upcoming storm[4] and she now had to "prepare for the storm in both Central and South Florida." (*Id.* at 2, ¶3). On August 2, 2024, the Court granted the Motion and gave Professor Reyes until August 12, 2024 to file her Response. (Doc. 83).

On August 12, 2024, Professor Reyes's record evidence was delivered to the district court clerk's office for filing in the form of a USB drive as previously instructed by the Clerk's Office due to the voluminous nature of her evidence (beyond the limits for electronic filing through the court's CM/ECF filing system. (Doc. 86). The record evidence that Professor Reyes submitted to the court consisted of the following:

### 1. Defendant/FAMU Division of Audit and Compliance Audio Recordings

---

[4] Devoun Cetoute, *Gov. DeSantis declares state of emergency as coming heavy rains might cause 'major disaster,'* THE MIAMI HERALD (AUG. 1, 2024), https://www.miamiherald.com/news/state/florida/article290676214.html. (Doc. 82 at 2, n.3).

a.  College of Law Professor John Duncan

b.  College of Law Program Assistant Evett Collins

c.  College of Law Program Assistant Celia Westbrook

d.  College of Law Program Assistant Doranne Riggio

e.  College of Law Professor Phyllis Taite

f.  College of Law Professor Joe Grant

g.  College of Law Program Assistant Celia Westbrook (2nd Recording)

h.  College of Law Professor Maritza Reyes

2. **Defendant/FAMU Surveillance Video Recordings**

a.  February 9, 2015 - IT & Registrar Offices

b.  April 15, 2015 – Faculty Conference Room

c.  February 24, 2016 – Faculty Conference Room

d.  May 6, 2019 – First Floor Elevator Atrium

e.  May 6, 2019 – Third Floor Elevator Library/Faculty Suite Entrance

f.  January 15, 2020 – Faculty Conference Room

g.  January 13, 2022 – First Floor Elevator Atrium

3. **Deposition Transcripts**

a.  College of Law Professor LeRoy Pernell – May 9, 2024 (**40 Exhibits**)

b.  College of Law Professor Patricia Broussard – May 16, 2024 (**29 Exhibits**)

c.  Plaintiff Maritza Reyes – May 24, 2024 (**11 Exhibits**)

d.  FAMU President/Dr. Larry Robinson – June 20, 2024 (**37 Exhibits**)

On August 12, 2024, Professor Reyes filed an Emergency Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment, which was unopposed. (Docs. 87, 88). Professor Reyes explained that she had been actively working on her Response and planned to submit it by the August 12, 2024, deadline; however, she was still dealing with medical issues due to COVID, including difficulty concentrating, which was causing her difficulty to prepare her Response. (Doc. 87 at 2, ¶ 3). Professor Reyes explained that "perhaps she should have requested more days in her prior request. However, she did not expect that COVID would be as difficult as it ha[d] been and would exacerbate other medical issues." (*Id.* at 2, ¶ 3). She added that, on August 5, 2024, "she saw her neurologist who administered tests and prescribed an additional medical test, which [she] postponed until after the current deadline to submit her response." She said that she was "prepared to explain further on the record if the Court deem[ed] it necessary and proper" and was "also prepared to seek documentation from her neurologist about what happened at the medical appointment on August 5, 2024 if the Court require[d] it." (*Id.* at 2 n.2). She explained that "the unforeseen health issues ha[d] made it extremely difficult to concentrate thereby requiring a lot more time than [she] expected." (*Id.* at 2, §3). On August 13, 2024, the Court granted the Motion and gave Professor Reyes until August 19, 2024 to file her Response. (Doc. 89).

**Professor Reyes's Medical Issues with her Eyesight**

"On August 19, 2024 and few days before that, [Professor Reyes] had medical issues with her eyesight which [she] attributed to eye strain due to long hours working on the computer. [She] put drops in her eyes and thought she could continue working as she had done before. However, her vision became drastically impaired by Monday, August 19, 2024, to the point of partially losing vision in one eye and having blurry vision in the other one. This medical issue also happened a year before and two years before. [She] was treated for the medical issue at the time. Professor Reyes's prolonged use of computer screen time in preparation of her Response may have been a factor that caused the recurrence of the medical issue. However, it was unexpected. The additional use of computer screen time was exacerbated by computer issues with document formatting which [Professor Reyes] spent hours trying to resolve. [She] sought remote technical assistance that did not resolve the issue but figured a run-around the issue; however, this run-around caused additional screen time and work for [her]." (Doc. 102 at 2-3, ¶4).

Professor Reyes also explained that she "does not have a law firm setup as she has not been in practice for over a decade. She did not have access to an IT person in-house; she had to try to identify the technical problem and resolve it herself. After she could not, she sought remote technical assistance, which did not resolve the

problem completely but gave [her] an option to work around it although it took more time." (*Id.* at 3 n.1).

On the date of the August 19, 2024 deadline, Professor Reyes "kept trying to finalize her materials but was unable to properly read from the computer. Unfortunately, [she] could not continue to work on her materials without possibly causing damage to her eyes. At that point, [she] was basically incapacitated and could not even prepare an emergency motion, which would have been the only way for [her] to communicate with the Court to seek relief [due to Middle District Local Rule 3.01(k)] by way of an emergency request for an extension of time to submit her Response and Declaration." (*Id.* at 3, ¶5, n.2).

"Rather than miss the Court's deadline altogether, Professor Reyes submitted a draft Response, which needed final edits. Professor Reyes was unable to submit her Declaration and supporting exhibits." (*Id.* at 3). Professor Reyes "decided to not further compromise her health" as she recalled that another FAMU College of Law professor's health deteriorated as she pursued litigation against FAMU, and died not long after the case settled. (*Id.* at 3-4 n.3)." "Two of the GrayRobinson attorneys who entered appearances in this case also represented [FAMU] in [that other] case." (*Id.*).

**After Professor Reyes Submitted her Draft Response**

"The week of August 19, 2024, [Professor Reyes] was still suffering from impaired vision. She was also suffering from a migraine headache [for which she had been treated "for the past couple of years"]. (*Id.* at 4, ¶6 & n.4). "She had to make a choice to prioritize her health and reduce the use of the computer. At that point, [she] did not know what she would be able to do and when she could resume the computer use without causing further damage to her eyes."

**Professor Reyes's Efforts to Persuade FAMU and its Attorneys to Join Her in a Motion to Replace her Response with a Corrected Response and Declaration with supporting exhibits or Not Oppose her Motion**

Professor Reyes began to confer in good faith with FAMU's counsel about her medical issues on August 22, 2024, after she conferred with her ophthalmologist, and continued to communicate with FAMU's counsel about her ongoing medical situation. (Doc. 92 at 3, ¶ 7). She asked FAMU's counsel if, in their collective years of experience, they had come across a similar situation and how it was addressed; FAMU's experienced counsel responded that they had never come across that type of situation. (Doc. 92 at 3, ¶¶ 8-9).

"On August 27, 2024, [Professor Reyes]'s primary care physician told [her] that the issue with her eyes may have been caused or exacerbated by Covid." (*Id.* at 3, ¶ 6). "[Professor Reyes] reviewed the Local Rules and the Court's website to ascertain

whether there is a procedure to provide this type of information to the Court. Plaintiff did not find any." (Doc. 92 at 5, ¶ 17).

**Professor Reyes's "Time-Sensitive Notice" Regarding her Response and Declaration in Opposition to Defendant's Motion for Summary Judgment**

"On September 3, 2024, [Professor Reyes] contacted the Clerk of Court to ascertain whether there [wa]s any way to apprise the Court in this type of situation. The Clerk's office responded that they [couldn't] provide advice but suggested that a notice may be proper." (*Id.* at 5, ¶ 18).

On September 3, 2024, Professor Reyes, while still dealing with the exigent medical issues, filed a "Time-Sensitive Notice" advising the Court about her medical situation and her conferrals with FAMU's counsel about it. She specifically stated that she planned to file a motion to request the court to accept her corrected response and declaration. She also explained that she was still dealing with blurry vision and referenced the CMSO's October 2, 2024 deadline for all motions. She informed the court that she had been treated before by her ophthalmologist for the condition, but her primary care physician thought this time it may have been caused or exacerbated by Covid, which Professor Reyes had for the first time very recently as she advised the court when she requested an extension of time to file her response to Defendant's Motion for Final Summary Judgment. (*See generally* Docs. 82 at 1-3, 87 at 1-3, 92 at 1-5).

**FAMU's Reply**

On September 3, 2024, FAMU filed its Reply in Support of its Motion for Summary Final Judgment. (Doc. 93).

## Court's Ruling on Second Motion to Dismiss

On September 9, 2024, the Court denied Defendant's Second Motion to Dismiss and gave Defendant until September 23, 2024 to file an answer to Plaintiff's Second Amended Complaint. (Doc. 94).

## Defendant's Answer

On September 23, 2024, Defendant filed its Answer and thirteen (13) Affirmative Defenses. (Doc. 97).

On September 25, 2024, the court, *sua sponte*, amended the CMSO for the first time. (Doc. 98). It changed the remaining deadlines for the Meeting in Person to Prepare Joint Final Pretrial Statement (to November 22, 2024), Joint Final Pretrial Statement (to December 2, 2024), Trial Status Conference (to December 10, 2024), and beginning of Trial Term (to February 3, 2025). (Doc. 98 at 1-2).

On October 2, 2024, the parties met the deadline to file all other motions, including Motions *in Limine*. (Doc. 26 at 2).

## Professor Reyes's October 2, 2024 Motions

On October 2, 2024, the court's deadline for all motions, Professor Reyes filed the following four (4) motions, which were all opposed by FAMU (Docs. 113, 115, 116, 118):

(1) Time-Sensitive Motion to Replace Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment with Plaintiff's Corrected Response in Opposition to Defendant's Motion for Summary Judgment and for the Court to Accept Plaintiff's Declaration (Doc. 102) and a Notice of Filing Declarations in Support of the Motion (Doc. 103).

(2) Motion *in Limine*. (Doc. 104).

(3) Time-Sensitive Motion to Re-Open Discovery and Summary Judgment. (Doc. 105)

(4) Motion to Stay Case Pending Exhaustion of Administrative Remedies after Wrongful Termination. (Doc. 106).

## Professor Reyes's Time-Sensitive Motion to Replace her Response with her Corrected Response and Declaration

On October 2, 2024, Professor Reyes filed (a) Plaintiff's Time-Sensitive Motion to Replace Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment with Plaintiff's Corrected Response in Opposition to Defendant's Motion for Summary Judgment and for the Court to Accept Plaintiff's Declaration (Doc. 102) and (b) Plaintiff's Notice of Filing Declarations in Support of Time-Sensitive Motion to Replace Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment with Plaintiff's Corrected Response in Opposition to Defendant's Motion for Summary Judgment and for the Court to Accept Plaintiff's Declaration (Doc. 103).

On October 4, 2024, Professor Reyes filed Plaintiff's Time-Sensitive Amended Notice of Filing Declarations in Support of Time-Sensitive Motion to Replace Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment with Plaintiff's Corrected Response in Opposition to Defendant's Motion for Summary Judgment and for the Court to Accept Plaintiff's Declaration ("Amended Notice"). (Doc. 107).[5] This Amended Notice included six (6) witness declarations: Wanda Aviles (Exhibit "1" dated 9/20/24); Nicole Dickerson (Exhibit "2" dated 9/25/24); Guillermo Flores (Exhibit "3" dated 10/1/24); Natalya Lopez (Exhibit "4" dated 8/18/24); Charles Smith (Exhibit "5" dated 8/17/24); and Celia Westbrook (Exhibit "6" dated 8/18/24) ("Witness Declarations"). (Doc. 107-2).[6]

**Professor Reyes's Motion to Strike FAMU's Affirmative Defenses**

On September 15, 2024, Professor Reyes filed her Motion to Strike FAMU's Affirmative Defenses. (Doc. 112). FAMU opposed the Motion. (Doc. 122).

**Settlement Conference**

---

[5] During this time, Florida residents, including Plaintiff, were preparing for Hurricane Milton.

[6] Between October 2, 2024 and October 4, 2024, Professor Reyes worked to resolve a document upload error that was interfering with the filing of the six (6) Witness Declarations through the Case Management/Electronic Filing System ("CM/ECF"). (Doc. 107, ¶¶ 2-5). After receiving instructions from the Clerk of Court and trying different options to fix the problem, Plaintiff was finally able to upload the Declarations, on October 4, 2024, through CM/ECF all in one (1) PDF composite document as Exhibits 1 through 6. (Doc. 107-2).

On October 24, 2024, the parties met for a settlement conference in the United States District Court in Orlando, as scheduled; U.S. Magistrate Judge Leslie Hoffman Price declared an Impasse. (Doc. 121).

**District Court's Orders**

On November 1, 2024, the court entered three (3) separate Orders denying:

(1) Plaintiff's Time-Sensitive Motion to Replace Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment with Plaintiff's Corrected Response in Opposition to Defendant's Motion for Summary Judgment and for the Court to Accept Plaintiff's Declaration (Doc. 102);

(2) Plaintiff's Motion to Reopen Discovery and Summary Judgment (Doc. 105); and

(3) Plaintiff's Motion to Stay Case Pending Exhaustion of Administrative Remedies After Wrongful Termination (Doc. 106). (Docs. 124, 125, 126).

On November 4, 2024, the court entered another Order denying Plaintiff's Motion to Strike Defendant's Affirmative Defenses (Doc. 112). (Doc. 127).

On November 6, 2024, Plaintiff filed Plaintiff's Time-Sensitive Notice of Intent to File Motions for Reconsideration of the Court's Recent Orders to inform the Court

that she intended to file Motions for Reconsideration of three (3) Orders that were recently issued by the Court (Docs. 124, 125, and 127). (Doc. 128).[7]

**Professor Reyes's Motions for Reconsideration**

On November 15, 2024, Plaintiff filed Plaintiff's Time-Sensitive Motion for Reconsideration of Court's Order (Doc. 124) Denying Plaintiff's Time-Sensitive Motion to Replace Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment with Plaintiff's Corrected Response and for the Court to Accept Plaintiff's Declaration (Doc. 102). (Doc. 130). FAMU opposed the Motion. (Doc. 137). On December 10, 2024, without ruling on Professor Reyes's Motion to File a Reply (Doc. 139), the court denied Professor Reyes's Motion for Reconsideration. (Doc. 144).

On December 18, 2024, Professor Reyes filed her Motion for Reconsideration of the Court's Order Denying her Motion to Strike Defendant's Affirmative Defenses. (Doc. 147). FAMU opposed the Motion. (Doc. 149).

**Court's Amendments of CMSO and Emergency Motions re Pretrial Deadlines**

On November 19, 2024, Plaintiff filed Plaintiff's Emergency Motion for Extension of Pretrial Deadlines, including the November 22, 2024 (Meeting in Person) and December 2, 2024 (Joint Final Pretrial Statement) deadlines

---

[7] On November 7, 2024, U.S. Magistrate Judge Daniel C. Irick struck Plaintiff's Notice (Doc. 128). (Doc. 129). Judge Irick stated: "The rules of this court do not provide for the filing of a notice of intent to file a motion." (*Id.*).

("Emergency Motion re Pretrial Deadlines"). (Doc. 131). This emergency motion was opposed by FAMU and was never specifically ruled upon (until the court entered summary judgment for FAMU and denied all pending motions as moot).

On November 22, 2024, Plaintiff and Defendant's counsel met for the required Meeting in Person to Prepare Joint Final Pretrial Statement. (Doc. 98 at 1).

On November 26, 2024, at 11:53 AM, the Court *sua sponte* amended the date of the Trial Status Conference from December 10, 2024 to December 3, 2024. (Doc. 132).

On November 26, 2024, at 4:46 PM, Plaintiff filed Plaintiff's Emergency Motion for Extension of Deadline to File Joint Final Pretrial Statement ("Emergency Motion re Joint Final Pretrial Statement") seeking a seven-day extension of the deadline to submit the Joint Final Pretrial Statement by December 9, 2024, to avoid conflicts with availability during Thanksgiving week. (Docs. 133, 136). This emergency motion was opposed by FAMU and was never specifically ruled upon (until it was summarily denied when the court entered summary judgment for FAMU and denied all pending motions as moot).

On November 24, 2024, at 8:15 PM, FAMU filed Defendant's Response in Opposition to Plaintiff's Emergency Motion re Pretrial Deadlines ("Defendant's Response re Pretrial Deadlines"). (Doc. 134).

On November 27, 2024, Professor Reyes filed Plaintiff's Emergency Motion to File a Reply to Defendant's Response re Pretrial Deadlines. (Doc. 135). This emergency motion was opposed by FAMU and was never specifically ruled upon (until it was summarily denied when the court entered summary judgment for FAMU and denied all pending motions as moot).

On November 29, 2024, the Court *sua sponte* amended the date of the Trial Status Conference from December 3, 2024 to January 15, 2025. (Doc. 136).

On December 1, 2024, Plaintiff, on behalf of both parties, filed a Joint Emergency Request for a Status Conference Regarding Coordination of Joint Final Pretrial Statement ("Joint Emergency Request for a Status Conference"). (Doc. 138). This emergency motion was opposed by FAMU and was never specifically ruled upon (until it was summarily denied when the court entered summary judgment for FAMU and denied all pending motions as moot).

On January 8, 2025, the Court entered a third Order amending the CMSO. (Doc. 151). On January 10, 2025, the Court entered its Order granting summary judgment in favor of FAMU. (Doc. 153). On January 13, 2025, Judgment in favor of FAMU was entered. (Doc. 154). On January 27, 2025, FAMU filed its Proposed Bill of Costs. (Doc. 156). On February 10, 2025, Professor Reyes filed her Notice of Appeal. (Doc. 157).

On February 12, 2025, costs were taxed against Professor Reyes. (Doc. 159). Professor Reyes filed a Motion for the court's review of the proposed costs. (Docs. 160, 168). FAMU opposed the Motion. (Doc. 165). The court granted the Motion in part and denied it in part; the court extended the deadline for Professor Reyes to seek review of the costs until fourteen (14) days after this Court resolves this appeal. (Doc. 169).

## II.    STATEMENT OF THE FACTS

On February 26, 2009, Dean LeRoy Pernell sent Professor Reyes a letter advising her that he was recommending to then Provost Cynthia Hughes Harris that she be hired in a tenure-track position in the FAMU College of Law ("CoL"). LP(28:22-25; 29:1-19; Ex. 2). After that took place, FAMU made Professor Reyes an offer of employment on March 30, 2009 and Professor Reyes signed her acceptance on April 7, 2009. LP(29:23-25; 30:1-25; Ex. 3).

When Professor Reyes accepted the offer to join the faculty, the CoL was not yet fully accredited by the American Bar Association ("ABA") and was seeking full accreditation; she was hired after the ABA criticized the hiring practices and the law school was trying to hire in the traditional process with the credentials for a tenure-track professor. PL(152:12-23).

During her hiring negotiations, Professor Reyes requested and received the standards for promotion and tenure that would apply to her, namely the University

and CoL Faculty Handbook and a memorandum termed the "Nunn Memo" (because it was authored by then Associate Dean of Academic Affairs Kenneth Nunn). PL(128:10-131:1). The Nunn Memo was appended to the accreditation application materials that the CoL submitted to the ABA for purposes of accreditation. LP(34:1-25; 35:1-23-Ex.3); LP(36:14-25; 37:1-24, Ex. 3); PL(129:7-16; 130-4-21).

In Fall 2011, Professor Reyes submitted her application for promotion to associate professor in accordance with the standards that were provided to her. PL(76:16-19). She submitted her application with her not yet published law review article and the letter of acceptance for publication from the *Temple Law Review*. PL(126:14-15). Her application was processed with submission of the unpublished manuscript in accordance with the Nunn Memo. PL(126:16-21); LP(55-63; 64:1-2; Exs. 4, 6). Her promotion to associate professor was approved by then FAMU's President James Ammons effective Fall 2012. PL(75:6-77; 18 Ex. 5).

Professor Reyes applied for tenure in Fall 2014. Her tenure was approved on June 10, 2015 under the Administration of Provost Marcella David, a law professor, and President Elmira Mangum, Ph.D. PL(92:13-93:23). Professor Reyes was first eligible to apply for promotion to full professor in Fall 2017; however, she was not able to apply because, despite her repeated requests, she did not receive the electronic case access she needed to apply via the Interfolio electronic application system, which was implemented that year for the first time. PL(112:11-20).

The majority employees in the CoL are Black. References to race of individuals are based on FAMU's own personnel records. LP(189:23-25; 190:1-5; Ex.33). Professor Reyes was the first Hispanic (man or woman) to be hired as a tenure-track faculty member. Once she earned tenure, she became the first Hispanic (man or woman) to be tenured and the first non-Black woman. LP(194:9-25; 195:1-23). The clique that took control of Professor Reyes's tenure process and application process in 2018 included Professor Patricia Broussard, someone who was hired as a non-tenure track one-year visitor through her connection with then Interim Dean James M. Douglas. PB(13:16-25; 14:1-21).

## DIRECT EVIDENCE OF RACIST ANIMUS

Professors Nicola ("Nicky") Boothe-Perry, Patricia Broussard, Ann Marie Cavazos, Lundy Langston, and Phyllis Taite were a group of Black women whom Professor Ron Griffin called "malicious, evil, racist and vile" against Professor Reyes during an RPT Committee meeting on October 23, 2014, when they were derailing Professor Reyes's tenure process. PL(165:8-20). Professor Lundy Langston used Professor Griffin's statement to file a complaint against him; after that, he went along with the vote to deny Professor Reyes promotion to full professor in 2018. PL(167:7-168:7).

On October 23, 2019, Professor Levitt sent an email to the entire faculty addressed to Professor Reyes attacking her racially. He stated, self-servingly, that

24

there should not be any "EO concerns." He applied a litmus test to question Professsor Reyes's racial identity. He resurrected his prior use of Professor Nise Nekheba's self-identification as Afro-Latina to falsely set up a race-based accusation against Professor Reyes. He once again pitted Professor Reyes against Professor Nekheba as "White Latina" versus "Black Latina." LR(Ex. 26).

In his email to the entire faculty, Professor Levitt also ascribed to Professor Reyes the thinking of a Spanish conquistador who was known for being a torturer and mass murderer of indigenous people. He also falsely alleged that she admitted not understanding the diversity of Black people. Professor Levitt also told her that she did not have the superior knowledge and experience he had about "race, ethnicity, color, gender and religion in the US" because, according to him, her experience was not morally equivalent to his as a Black man. He also labeled Professor Reyes a descendant of the "enslavers" of "[his] people" and criticized the definition of Latino from the U.S. Census that Professor Reyes used in a 2008 article in the *Harvard Law School Record* when she was a law student. LR(Ex. 26).

On November 13, 2019, Professor Reyes sent a memorandum to President Larry Robinson, Provost Maurice Edington, General Counsel Denise Wallace, EOP Director Carrie Gavin, and the College of Law faculty (who were copied by Professor Levitt) protesting the racial attack and asking for something to be done.

LR(Ex. 26). During his deposition, President Robinson said that he did not know if anyone followed up with Professor Reyes. LR(178:11-13).

During his deposition, President Robinson admitted that he was familiar with the University Code of Conduct, Regulation 1.019, which requires managers to have an open-door policy to reporting of incidents like the one Professor Reyes reported to him on November 13, 2019, but he did not take responsibility for doing something about it. LR(178:14-25-183:1-16, Ex. 27). He also admitted that he received "many emails" from Professor Reyes complaining of discrimination "and [he] felt like [he] was on The Quad in terms of the number of things that she reported." LR(161:1-4).

### THE DEPOSITIONS[8]

**Professor and Former CoL Dean LeRoy Pernell**

Professor Reyes conducted the deposition of Professor LeRoy Pernell on May 9, 2024. (Doc. 86).

During his deposition, Professor Pernell admitted the existence of the Nunn Memo. LP(41:9-25; 42; Ex.4). Professor Pernell said that he hired Professor Kenneth Nunn as Associate Dean and he recalled that Associate Dean Nunn helped to prepare

---

[8] Because the size of the deposition transcripts, with all exhibits embedded, exceeded the 50 megabyte limit that can be filed electronically through the Case Management/Electronic Filing System (EC/MF), the Clerk's Office instructed Professor Reyes to deliver the transcripts to the Clerk's Office in an USB Drive. See "Plaintiff's Notice of Filing Recording and Transcripts in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law." (Doc. 86).

materials for the ABA, but he did not recall if the Nunn Memo was appended to the CoL 2008 ABA Self Study, which was submitted to the American Bar Association (ABA) for purposes of accreditation. LP(40:12-25; 41:1-7).

Professor Pernell admitted that the offer letter Professor Reyes received from Provost Cynthia Hughes Harris, dated March 30, 2009, which she accepted on April 7, 2009, stated that Provost Harris included the tenure guidelines. It also stated that Professor Reyes was being hired as a tenure earning Assistant Professor in the CoL and specified that she would be eligible to apply for tenure during the 2014-2015 academic year. LP(29:23-25; 30:1-25; 31, Ex. 3).

Professor Pernell admitted that the CoL and the University have tenure and promotion criteria. LP(34:1-25; 35:1-23). Professor Pernell admitted that the Nunn Memo states: "For purposes of promotion to associate professor, Rule X.B.1.iii is interpreted to require the completion of a scholarly manuscript that has been accepted for publication." LP(42:1-11).

Professor Pernell admitted that the Nunn Memo states: "for purposes of promotion to professor and/or tenure, Rules VIIIA and IX are interpreted to require the completion of at least two additional scholarly works over that required for promotion to associate professor." LP(43:13-17).

Professor Pernell admitted that the memorandum dated September 17, 2018, from RPT Committee Chair Rob Abrams to Plaintiff, stated that the "Standards for

Promotion to Full Professor" were excerpted from the 2002-2004 Faculty Handbook approved by the Provost. LP(46:11-25; Ex. 5). Professor Pernell admitted that the Standards provided in Professor Abrams's September 17, 2018 memorandum stated that participation in conferences, panels, and other evidence of scholastic ability is considered as part of research and scholarship. LP(53:3-16; Ex. 5).

Professor Pernell admitted that Professor Reyes's Fall 2011 application for promotion to associate professor was recommended for approval with one unpublished manuscript of a law review article with an acceptance for publication letter from the *Temple Law Review*, which stated that the article would be published in Spring 2012. LP(60:18-25;61-63; Ex.5).

Professor Reyes introduced the list of publications she included with her Fall 2018 application for promotion to full professor as Exhibit 7. LP(64:3-13; Ex. 7). Professor Pernell admitted that said exhibit listed six (6) law review articles. LP(64:10-13; Ex. 7). Professor Pernell admitted that law professors sometimes publish "In Memory Of" articles in law review journals to honor someone's memory; he said that he has published several of those. LP(66:23-25; 67:1-17). He said he published those articles to honor the persons who had passed. LP(67:7-11).

Professor Reyes introduced the RPT Committee Report and Recommendation dated November 15, 2018, which recommended denial of promotion to full professor, as Exhibit 8. LP(76:6-14). Professor Pernell admitted that the scholarship

section focused on two (2) publications after tenure. The Report (Exhibit 8) stated and concluded:

**Post-Tenure Publications**

In the period since tenure, Associate Professor Reyes has had two items published in law reviews and has produced three blog posts in the immigration field (citations available on her CV). The law review publications (reproductions are included in her scholarship materials on Interfolio) are:

- Maritza I. Reyes, *In Memory of Julie Chek*, 10 FLA. A&M UNIV. L. REV. ix (2015).

- Maritza I. Reyes, Angela Mae Kupenda, Angela Onwuachi-Willig, Stephanie M. Wildman & Adrien Katherine Wing, *Reflections on Presumed Incompetent: The Intersections of Race and Class for Women in Academia Symposium—The Plenary Panel*, 29 BERKELEY J. GENDER L. & JUST. 195 (2014) (lead article).

The Report (Exhibit 8) recommended denial because it stated that the committee concluded:

*Overall, the committee concludes that Associate Professor Reyes does not meet the standard for excellence in scholarship required for promotion to the rank of Professor of Law.*

Professor Pernell admitted that prior reviews of scholarship would have been available to the RPT Committee. ==LP(85:6-13).== Professor Pernell admitted that the voting page of the Report (Exhibit 8) stated that the RPT Committee members who voted to deny promotion, at a meeting on November 5, 2018, were: (1) Robert Abrams, a White man; (2) Nicola (Nicky) Boothe-Perry, a Black woman; (3) Patricia (Pat) Broussard, a Black woman; (4) Ann Marie Cavazos, a Black woman; (5) Ronald Griffin, a Black man; (6) William (Bill) Henslee, a White man; (7) Darryll Jones, a Black man; (8) Rhonda Reaves, a Black woman; (9) Jennifer Smith, a Black

woman; and (10) Phyllis Taite, a Black woman. LP(87:11-25; 88-89; 90:1-6; 188:12-13, 16-17; 189:21-25, Ex. 33; 190:10-13; 190:21-22, 23-25; 191:1-3; 191:6-9).

## President Larry Robinson[9]

Professor Reyes conducted the deposition of President Larry Robinson on June 20, 2024. (Doc. 86).[10] Iris Elijah, Deputy General Counsel for FAMU was present in addition to FAMU's counsel in this case. LR(5:15-16) President Robinson said that he served in many roles for many years at FAMU since 1997, including Director, Provost, Vice President of Research, Special Assistant to the President, Interim President (three times), and finally President effective November 2017. LR(9:15-25-13:20). President Robinson appointed Rodner Wright as Provost[11] when he was Interim President from 2012 to February 2014, after which President Elmira Mangum began her presidency on April 1, 2014. LR(13:4-10). Thereafter, in September 2016, President Robinson became Interim President again after President

---

[9] All references to President Robinson's deposition are references to Doc. 86; therefore, I will only reference the page numbers, line numbers, and exhibits in each of these paragraphs.

[10] On July 12, 2024, FAMU announced that President Robinson would step down effective August 4, 2024.

[11] Provost Wright participated in the ploy to deny me tenure when I applied in Fall 2014. President Mangum had just arrived and had not selected her own provost. Thankfully for me, she selected Provost Marcella David, someone who was not part of the discrimination tactics. Provost David, a highly competent law professor, did an independent review of my application and recommended that my tenure be approved; President Mangum did the same.

Mangum was ousted. LR(13:9-16). In November 2017, he was finally selected President (no longer interim). LR(13:16-20).

President Robinson admitted that Professor Reyes's tenure was approved during the time when Dr. Elmira Mangum was President and Law Professor Marcella David was Provost. LR(25:19-25; 26:1). President Robinson admitted that the Provost's published schedule for applications for promotion and tenure does not include an hour time for the deadlines. The deadlines are just days and months. LR(26:9-19). President Robinson admitted that tenure-track faculty who do not apply in the sixth year are "removed from the university's ranks." LR(27:22-25; 28:1-3). President Robinson admitted that if an application for tenure is denied, the professor gets a terminated with a terminal year. LR(30:6-17).

Professor Reyes introduced Exhibit 6, which is a composite of emails between then Associate Dean Joan Bullock and then Provost Rodner Wright. Professor Reyes asked President Robinson to review it and describe it. He admitted that they were emails dated October 6-7, 2014 about someone's application for tenure being submitted allegedly at 5:05 PM. Professor Reyes asked President Robinson whether a faculty member who has been working hard toward tenure for six (6) years could be denied tenure without review over an accusation of five-minute late submission (5:05 PM) even if the published deadline only has a date (without a time). LR(37:21-

25; 38-39:20). He stated: "the dean and the provost and the person who made the allegation would have discretion to decide." LR(39:14-16).

After this exchange, Professor Reyes introduced Exhibit 7, which was the Provost's 2014-2015 published schedule for tenure and promotion applications. She asked President Robinson if the schedule had a time next to any of the deadlines and he said no. LR(40:1-19). Professor Reyes asked him again if someone could be denied tenure over an allegation of 5:05 PM submission when the deadlines in the published schedule do not have dates. He said yes. LR(40:24-25; 41:1-4).

Professor Reyes introduced Exhibit 8, the University Faculty Handbook and asked President Robinson to review it with her on the record. He did. LR(41:6-25; 47:18-25; 48:15-20). Professor Reyes pointed him to this specific provision:

```
15      A.    "Candidates must meet the minimum number of
16   publications required by their respective colleges,
17   schools or institute for tenure and/or promotion.  For
18   promotion to full professor, these publications must be
19   performed during the tenure of the faculty member as an
20   associate professor."
```

Professor Reyes asked President Robinson to explain what the last part of the above quoted language means, and he said that **it means that you count the publications from the promotion to associate to the promotion to full professor**. LR(49:2-21). This questioning happened before lunch time.

After President Robinson returned from having lunch with attorney Sarah Reiner and Deputy General Counsel Iris Elijah, he admitted that he spoke with defense counsel and that he wanted to clarify some things. LR(123:1-20). He changed his testimony and admitted that he spoke with defense counsel, during lunch, about his testimony on the particular topic of the period from which the publications are compared (associate promotion to full professor promotion) or (tenure to full professor promotion). He changed his testimony in contravention of what he admitted is stated in the University Faculty Handbook. LR(260:14-261:7; 262:15).

President Robinson admitted that the University Faculty Handbook expressly states: "The president has the final authority to approve or deny promotions." LR(52:5-6). President Robinson admitted that the University Faculty Handbook states: "The criteria for faculty tenure shall be provided to all tenure-earning faculty upon hire." LR(54:1-2). Professor Reyes asked him why and he responded that it is so that faculty members know how to begin preparing to meet the criteria. LR(54:3-9).

Professor Reyes introduced, Exhibit 9, which included the referral from Provost Rodner Wright to the Division of Audit and Compliance (DAC) for an investigation of the time Professor Reyes submitted her application for tenure after they received an allegation that she submitted it at 5:05 PM. LR(57:10-13; 60:4-16; Ex. 9). Professor Reyes asked President Robinson about the role of the audit and compliance

functions. He initially said that they investigate fraud and abuse. LR(61:1). And then he added that in the situation of the 5:05 PM allegation, they also investigate "something worthy of review." LR(61:4-5).

Professor Reyes introduced the Declaration President Robinson filed in this case (Doc. 37-2). She went over the University Faculty Provisions that explicitly contradict what President Robinson stated in the Declaration he signed under penalty of perjury and filed with the court. LR(61:10-25; 62-69). In the Declaration and initially during the deposition, President Robinson stated that he had nothing to do with Professor Reyes's application for promotion to full professor; this Q&A transpired, at LR(66:15-24), about his discussions with Provost Maurice Edington about Professor Reyes's application for promotion:

```
15      Q.   And did you have any discussions with the
16  provost about the decision?
17      A.   Yes, but I can't remember any details.
18      Q.   Was Maritza Reyes the only applicant for
19  promotion when you had those discussions?
20      A.   I doubt that.
21      Q.   Are there notes of those discussions?
22      A.   No.
23      Q.   So how do those discussions happen?
24      A.   In the same way we're talking here.
```

In the next page of the transcript, at <mark>LR(67:1-12),</mark> President Robinson elaborated about the discussion with Provost Edington:

```
                      Larry Robinson
                      June 20, 2024                      67

 1      A.   Except they're not recorded.
 2      Q.   And so what is the content of the communication
 3   in terms of the discussion?  For example, do you recall,
 4   not the specifics necessarily, but what kind of
 5   discussion is it?  What kind of criteria matters are
 6   discussed?
 7      A.   Basically it's what the committees that
 8   recommended, the deans that recommended, and that's
 9   about it.  I really don't -- it's hard to delve into the
10   details of every promotion or every tenure decision at
11   the university.  There is a lot of people, a lot of
12   time.
```

When Professor Reyes asked President Robinson what criteria Provost Edington used to review her application for promotion, he said that he did not know. Defendant's counsel quickly interrupted Professor Reyes's line of questioning with objections, which stopped the testimony on this point because then the witness kept repeating "I don't know." <mark>LR(68:1-25).</mark>

Professor Reyes introduced Exhibit 11, which is the July 24, 2019 letter stating that her application for promotion was denied. LR(70:1, Ex. 11). She next introduced a composite exhibit of emails, Exhibit 12, and asked President Robinson to go over them with her. Those were emails she sent to him and Provost Edington on July 17, July 22, July 23, and August 5, 2019 (at 4:02 PM), asking for the decision. She copied Trustee Belvin Perry in her August 5th email. Provost Edington responded on August 5, 2019, at 5:42 PM, stating that the letter was sent to her mailing address. Professor Reyes responded that she did not receive it. The body of the letter itself contradicted the allegation that it was sent to her mailing address. LR(79:1-9;16-20).

During the deposition, this Q&A ensued about President Robinson not saying anything to Professor Reyes about delegating the decision to Provost Edington when Professor Reyes kept sending him the emails asking him for the decision. Professor Reyes was going over the emails with him when she asked him the following, at LR(79:1-9;16-20):

1  on that paragraph.  After the "I trust you are well" in

2  the next sentence, right, where it says "I write

3  directly to you because pursuant to the university

4  guidelines you are the administrator charged with making

5  the decision on applications for promotion and notifying

6  applicants."

7          Is Professor Reyes there under an understanding

8  that you are the final decision-maker you think

9  according to that sentence?  Is that what it conveys?

Followed by:

16      Q.   So when Professor Reyes addressed that email to

17  you, did you respond -- in this email thread that you

18  see here, did you respond and say "Professor Reyes, I

19  don't make the decisions?"

20      A.   I don't recall.

   Professor Reyes's next questions, on pages 79-81 of the deposition, where about the alleged mailing of the letter with the decision to her. President Robinson's answers to this line of questioning consisted of one (1) "I don't know" and five (5) "I don't recall." LR(79-81).

Professor Reyes went over Exhibit 16 with President Robinson. That exhibit was the list of publications she submitted with her application for promotion materials in 2018. LR(Ex.16). That list explicitly and irrefutably contradicted that she only submitted two (2) articles (an In Memoriam and a co-authored law review article), which was the reason the CoL RPT Committee and all institutional actors at subsequent levels of review gave to deny her promotion. LR(92-98:17; Ex. 16).

During the Q&A about the publications list (Exhibit 16), which consisted of five (5) pages, Professor Reyes asked President Robinson to compare the reason that was stated for denial in Provost Edington's letter (2 articles) and Interim Dean Pernell's report (2 articles) with the articles listed in the publications list Professor Reyes submitted with her application. President Robinson did the math and counted six (6) law review articles and four (4) refereed online articles. Professor Reyes asked President Robinson and he answered – LR(98:14-16):

```
14      Q.   Do you know if Provost Edington saw this
15   publications list?
16      A.   No.
```

President Robinson explained the reliance on the CoL Representative in the University Tenure & Promotion ("T&P") Committee review process. LR(105:3-5; 108:3). President Robinson was chair of the T&P Committee from 1997 until he became Provost in 2003. LR(105:13-15). He said that the representative of the CoL

in the University T&P Committee would share information with the Committee about what legal scholarship meets the standard. LR(104:25-105:1-22). President Robinson admitted that external reviews of scholarship would have to be arranged in the CoL RPT Committee. LR(107:11-108:1-2).

During the deposition, President Robinson shared that his youngest daughter has an affiliation with Harvard. Professor Reyes asked him if such an affiliation was important, including in terms of the regalia that faculty wear during graduation, and he responded that "people want to make sure this is right" and "it does mean something to people who work very hard to receive all those degrees." LR(119:14-120:15). Professor Reyes asked him if he recalled that she reached out to him about Dean Deidre Keller's refusal to list Harvard University in the list of schools from which faculty have law degrees. He answered that he recalled. Professor Reyes asked him what he did about her request. He responded: LR(115:5-21).

```
18        Q.   Okay.  Do you recall what you did about it?
19        A.   Other than make sure people were aware that you
20   had a concern; right?  And they are the people who fix
21   those kinds of things.
```

During his deposition, President Robinson stated that he would refer the matter to Academic Affairs. LR(116:3-10).

```
 3       Q.   A question like that, would it be referred to

 4   Academic Affairs or the Office of the General Counsel?

 5       A.   I think that's an Academic Affairs question,

 6   yeah.

 7       Q.   And why is it an Academic Affairs question?

 8       A.   Because it dealt with faculty members.  It

 9   didn't deal with anything that was of a legal matter, in

 0   my opinion.
```

During President Robinson's deposition, Professor Reyes introduced FAMU's own policy which dictated that Harvard University should be listed because her LL.M. is her highest degree and that is what is required by FAMU's own form. LR(Ex. 18). The College of Law Hooding Program did not list Harvard University. LR(Ex. 18 – Faculty Regalia section on page 5 of the program).

Professor Reyes began reaching out to President Robinson for help since he was Provost in 2013. LR(Ex. 20). In January 2017, she also reached out to him about the grievance procedure to get review of the arbitrary and capricious letter of counseling that then Dean Felecia Epps, a Black woman, issued to Professor Reyes after she received complaints from Professors Ann Marie Cavazos and Patricia Broussard. President Robinson denied Professor Reyes the procedure. The Division of Audit and Compliance also denied her request for review. LR(Ex. 21).

In March 2017, Professor Reyes once again reached out to President Robinson after Professor Jennifer Smith, a Black woman, with the approval of then Dean Felecia Epps, had Professor Reyes removed from the Students Disciplinary Committee thereby humiliating her in front of students who knew that she had her removed. LR(Ex. 22). President Robinson forwarded Professor Reyes's request to FAMU EOP Director Carrie Gavin who conducted the investigations that harmed Professor Reyes in the past. LR(Ex. 23). In her emails, Professor Reyes explained to President Robinson why it was futile to refer the matter to Director Gavin. LR(Ex. 24). Director Gavin's sham investigations were even noted in a court order in the U.S. District Court for the Middle District of Florida, Orlando, Division, in a case of a law student against FAMU for sexual harassment. LR(Ex. 25).

**Professor Patricia Broussard's Deposition**

Professor Reyes conducted Professor Patricia Broussard's deposition on May 16, 2024.

Professor Reyes introduced twenty-nine (29) exhibits, including documents and videos, that showed all the ways in which Professor Broussard sought to harm her, including with frivolous and malicious complaints at all levels of the institution. PB(Exs. 1-29). The video exhibits showed that Professor Broussard's harassment of Professor Reyes was also physical, including by running to get in an elevator with her and, then waiting for her at the next elevator after she left the first one to avoid

being alone with Professor Broussard and her friend, Professor Ann Marie Cavazos. PB(201:13-204:3). This running after Professor Reyes happened on May 6, 2019 after Professor Broussard submitted complaints about Professor Reyes for years claiming that she was "afraid" of her and had health issues because of her. PB(143:1-147:6). In Fall 2015, she replaced Professor Reyes as faculty advisor of the Hispanic American Law Student Association ("HALSA") without speaking with her or sending her an email about it. PB(100:18-103:18). She said that she could not remember which students gave her a form to sign as faculty advisor and, when asked if she would have contacted HALSA's president, she responded "No." PB(100:18-103:18). She said that she agreed to become the HALSA advisor, even though she was in "pretty bad" health and was concerned about Professor Reyes's "temperament." PB(106:2-11).

In 2015, Professor Broussard complained that Professor Reyes invaded her space during a faculty meeting; however, the surveillance video exhibit showed that two Black women were closer to Professor Broussard during the meeting and even touched her; however, Professor Broussard did not allege that they invaded her space. PB(Ex. 29). Professor Broussard admitted that she complained to Provost Marcella David about Professor Reyes and also filed a formal complaint against her with the Office of Equal Opportunity Programs. PB(143:1-147:6).

Professor Broussard was a member of the CoL RPT Committees that reviewed Professor Reyes's applications for tenure and promotion and Professor Broussard admitted that she voted to deny every application Professor Reyes submitted. PB(22:3-25-2). Professor Broussard was also a member of the University T&P Committee that reviewed those applications. PB(22:3-25-2).

Professor Reyes asked Professor Broussard how many times she had "filed a complaint against a fellow faculty member." PB(81:24-82:2). Professor Broussard responded: PB(82:1-2)

```
1       A.   Against a fellow faculty -- never.  Just
2   Professor Reyes.
```

Professor Broussard stated that all the members of the RPT Committee who reviewed Professor Reyes's application for promotion in 2018 also reviewed her application for tenure. PB(37:16-21).

## III.   STATEMENT OF THE STANDARDS OF REVIEW

As to Issue I, this Court reviews the district court's grant of a motion for summary judgment *de novo*, "viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Baxter v. Santiago-Miranda*, 121 F.4th 873, 883 (11th Cir. 2024) (citation and quotation marks omitted). Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As to Issue II, this Court reviews a district court's management of cases for abuse of discretion. "When a litigant's rights are materially prejudiced by the district court's mismanagement of a case, [this Court] must redress the abuse of discretion." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366-67 (11th Cir. 1997) (citing *United States v. McCutcheon*, 86 F.3d 187, 190 (11th Cir. 1996).

As to Issue III, this Court reviews a district court's discovery decisions for an abuse of discretion. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999). A discovery request is properly denied when "a significant amount of discovery has been obtained, and it appears that further discovery would not be helpful in resolving the issues." *Id.* at 1580.

# SUMMARY OF THE ARGUMENT

This case was not decided on the merits of the evidence that Professor Reyes placed in the record but could not use due to the onset of physical incapacity. The evidence established that the court erred when it granted summary judgment in favor of FAMU without allowing Professor Reyes to file a corrected response with a declaration that could have easily allowed the court to deny summary judgment.

The way in which the court managed the case disadvantaged Professor Reyes and favored FAMU. Professor Reyes's medical emergency was beyond her control. The court found good cause for extensions of time in other cases where less extenuating circumstances were cited by attorneys representing parties. Professor Reyes prosecuted this case diligently and in good faith while dealing with unexpected negative circumstances prompted by FAMU's termination of her employment. The court should have considered all the circumstances and allowed her to file her corrected response and declaration.

The court also erred by refusing Professor Reyes's request to reopen discovery and motions for summary judgment after the court delayed ruling on the pending motion to dismiss until after discovery closed. The court should have considered the additional disadvantage Professor Reyes faced when FAMU filed its thirteen affirmative defenses, but Professor Reyes did not have an opportunity to conduct discovery and file motions for summary judgment.

## ARGUMENT AND CITATIONS OF AUTHORITY

**"We must complain even if our complaints are not well-received."[12]**

I. The district court erred in granting summary judgment in favor of FAMU on all counts of Professor Reyes's Title VII causes of action, where Professor Reyes had record evidence to show genuine dispute as to material facts that would allow reasonable jurors to find by a preponderance of the evidence that FAMU discriminated and retaliated against her, but the district court did not allow her to cite to her evidence.

Plaintiff stated seven (7) Title VII causes of action in her Second Amended Complaint. (Doc. 34, ¶¶ 232-303).[13] The facts that support all her causes of action are interconnected. Some of her alleged facts provide background for the racial animus behind the discriminatory, hostile, and retaliatory actions she stated in her Second Amended Complaint and are connected to her causes of action.

---

[12] Maritza I. Reyes, *Symposium on Anita Bernstein's The Common Law Inside the Female Body: The Female Body in the Workplace: Judges and the Common Law*, 114 Nw. U. L. Rev. Online 177, 178 (2019) ("Assertions about negative liberty as held by possessors of female bodies, in short, catch figurative fire when spoken. No matter how a woman articulates her protest about an experience of invasion, she can count on drawing criticism about procedure, or substance, or doing it wrong. Formal routes to redress are built to make accusations costly for the accuser.") (citing Anita Bernstein, The Common Law Inside the Female Body 203 (2019)).

[13] In her initial Complaint, Plaintiff stated twelve (12) causes of action, including violations of Title VII, 42 U.S.C. § 1983, and the Florida Civil Rights Act of 1992, as amended and codified at Fla. Stat. § 760.01, et seq. (Doc. 1, ¶¶ 1, 217-263). In her efforts to address the deficiencies the Court outlined in its *sua sponte* Order of dismissal, Plaintiff separated the counts and only included Title VII causes of action in her Amended Complaint. (Doc. 10, ¶¶ 216-333). In response to the Court's second order of dismissal, Plaintiff further reduced the counts in her Second Amended Complaint to seven Title VII causes of action. (Doc. 34, ¶¶ 232-303).

In its decision to grant summary judgment in favor of FAMU on all counts, the court agreed with FAMU that "Plaintiff's Response does not dispute the Statement of Material Facts contained in the Motion with citation to record evidence. Indeed, the Response contains few citations to the record at all." (Doc. 153 at 4). The court did not even mention, not even in a footnote, that the court did not allow Professor Reyes to submit her corrected response with her declaration which would have included citations to all the evidence she had compiled and introduced during depositions of key witnesses. *See* Doc. 86. For this reason alone, the decision should be reversed by this Court.

Professor Reyes filed a "Time-Sensitive Notice" to advise the court about her medical situation. (Doc. 92). She filed a "Time-Sensitive Motion to Replace Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment with Plaintiff's Corrected Response in Opposition to Defendant's Motion for Summary Judgment and for the Court to Accept Plaintiff's Declaration" ("Motion to Replace") with Declarations in Support. (Docs. 102, 103, 107). After the court denied her Motion to Replace, Professor Reyes filed a Motion for Reconsideration which the court also denied (Docs. 130, 144). Yet the court, in its order granting summary judgment to FAMU did not mention any of this. Instead, the court stated: "Accordingly, to the extent that Plaintiff has failed to dispute Defendant's statement

of facts or otherwise support her arguments with record evidence, the Court will treat the facts laid out in the Motion as undisputed." (Doc. 153 at 4).

After that holding, the court went on to grant summary judgment to FAMU on Counts I, II, and III because Professor Reyes did not provide "citation to *any* record evidence for support" of her claim that the denial of her promotion was motivated by discriminatory animus. (Doc. 153 at 7). The court also found that there was also no citation to the record regarding several comparators Professor Reyes named. (Doc. 153 at 7). The court also found: "Without record support, Plaintiff necessarily cannot produce 'sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion.'" (Doc. 153 at 7). "Accordingly, Plaintiff's claims for employment discrimination fail at the outset." (Doc. 153 at 7).

Next, the court analyzed FAMU's alleged nondiscriminatory reason for the denial of promotion and fully credited FAMU's allegation that the denial was due to "fail[ure] to meet the standard for production of scholarship." (Doc. 153 at 8). The court gave full credit to what Provost Maurice Edington as "the [alleged] final decisionmaker with respect to Plaintiff's denial of promotion" and the College of Law Retention, Promotion and Tenure Committee stated. (Doc. 153 at 9). The court found FAMU's reason was a legitimate, nondiscriminatory reason and, as such, it had met its "'exceedingly light' burden of rebuttal." (Doc. 153 at 8). Additionally,

the court decided that Professor Reyes waived any argument that FAMU's alleged reason was pretextual because she "failed to develop and support any [such] argument." (Doc. 153 at 8). Finally, the court decided that Professor Reyes also failed to satisfy the "'convincing mosaic of circumstantial evidence'" because Professor Reyes's claims could not survive summary judgment "[u]nder any standard or procedural framework" because "Provost Edington" "disclaimed any discriminatory intent" and "the committee" "articulated a legitimate reason." (Doc. 153 at 9). The court once again noted that Professor Reyes "[did] not point to any ['convincing mosaic' or 'mixed-motive'] evidence, direct or circumstantial, in the record." (Doc. 153 at 9). And this is how the Court granted summary judgment for FAMU on Counts I, II, and III.

Next, the court moved on to the hostile work environment harassment counts and determined that "only acts of discriminatory harassment occurring on or after August 3, 2019, are timely." (Doc. 153 at 11). To make the determination of what incidents Professor Reyes alleged, the court only reviewed allegations Professor Reyes made in her EEOC Charge of Discrimination. (Doc. 153 at 11).

This evidence was filed in the court on August 12, 2024, and provided to FAMU's attorneys. (Doc. 86). The audio recordings and surveillance videos were FAMU's own public records. FAMU's counsel also received copies of the exhibits, which

consisted mainly of FAMU's own records, during the depositions.[14] Professor Reyes should have been allowed to provide her corrected response and declaration with citations to all the evidence she provided to the court and opposing counsel. The evidence amply demonstrated that there were many genuine issues of material fact that should have been decided by a jury.

When Professor Reyes was finally able to take President Robinson's deposition, his testimony proved that the allegations Professor Reyes stated in her Second Amended Complaint were true. (Doc. 34 at ¶¶ 109, 117, 118, 180, 181, 182, 185, 191, 197, 224, 225, 226, 228).[15] Provost Robinson admitted that as President he was the final decision-maker. President Robinson only claimed that he was not the final decision-maker in the Declaration he submitted to avoid being deposed. He admitted

---

[14] On July 2, 2024, FAMU's Provost Allyson Watson stated in her Declaration that: FAMU's records are kept in the regular course of its institutional operations and it is the regular practice of FAMU for an employee or representative with knowledge of the act, event, transaction or other matter documented to make the record or create or transmit the information contained within the record. FAMU's records are also made at or near the time of occurrence of the matters related by the record.
(Doc. 75-1 at 1, ¶ 3).

[15] In her Second Amended Complaint, Plaintiff included some of the incidents in which President Robinson participated. She could have included more, but she was chilled from doing so because her prior pleadings were dismissed as "shotgun pleadings" and the Court seemed to imply that perhaps she included too many allegations. Plaintiffs in these cases are between a rock and a hard place in deciding how much to include to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss (for insufficient allegations) and a "shotgun pleading" motion to dismiss (for too many allegations). (Doc. 45 at 3).

that what he stated in his Declaration was not accurate. He admitted that the College of Law RPT Committee did not use the proper scholarship standard to deny Professor Reyes's application for promotion. He admitted that the College of Law representative in the University T&P Committee, Professor Patricia Broussard, would guide the review of scholarship in the University T&P Committee. He admitted that he and Provost Edington deferred to the decision of the RPT Committee. He also admitted that he received Professor Reyes's complaints of discriminations for years and never followed up with her or with anyone else to see that something be done to help Professor Reyes. Therefore, he admitted the pretext reason for the denial of promotion and the and race discrimination that Professor Reyes complained about for years, which he did nothing to remedy other than allow the hostile work environment and retaliation to continue, including with his participation. Former Dean LeRoy Pernell also admitted that the RPT Committee did not follow the proper standard, and he went along with their reasoning and recommendation. Professor Patricia Broussard admitted that he was a member of the RPT Committee and the University T&P Committee. She admitted the allegations about her conduct that Professor Reyes made in her Second Amended Complaint. All of this evidence created genuine issues of material fact that precluded summary judgment.

**II.** The district court abused its discretion when it denied Professor Reyes's request to replace her Response in Opposition to FAMU's Motion for Summary Judgment with a Corrected Response and Declaration with citations to the record and affidavits.

The district court has inherent power to manage its docket "so as to grant enlargements of time even when such extensions fall outside the literal scope of Rule 6(b)." *Godoy v. Office of Bar Admissions*, No. 1:05-CV-0675-RWS, 2006 U.S. Dist. LEXIS 50654, at *7 (N.D. Ga. July 25, 2006)). In *Arch Specialty Ins. Co. v. BP Inv. Partners, LLC*, the same court that denied Professor Reyes's request for reconsideration, granted reconsideration "in the interests of justice," citing the Eleventh Circuit's strong preference "to resolve matters on the merits as opposed to procedural technicalities" "to give every litigant its day in court." No. 6:18-cv-1149-WWB-DCI, 2020 U.S. Dist. LEXIS 171764, at *4-5 (M.D. Fla. April 1, 2020) (citing *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1342 (11th Cir. 2014) (citation omitted). The court granted reconsideration despite being "firmly convinced Defendant ha[d] not set forth any basis for reconsideration or leave to file an untimely answer." *Id.* at *4. This court held: "Accordingly, despite Defendant's repeated and inexcusable neglect to justify its failure to timely answer, this Court, under its inherent authority to manage its docket and in the interests of justice, will allow the Clerk to docket Defendant's proposed Answer (Doc. 63-1) as its answer." *Id.* at *5.[16] The parties in

---

[16] The Court also held that the interests of justice did not "warrant granting Defendant leave to assert affirmative defenses or counterclaims" including because

*Arch Specialty* were represented by several attorneys. *Id.* at *1. The same court also exercised its inherent power and considered and granted a defendant's motion to dismiss "[i]n the interests of justice," even though defendant's motion failed to comply with the Court's Standing Order. *Bent v. Riley*, No. 6:21-cv-75-WWB-EJK, 2022 U.S. Dist. LEXIS 167844, at *1, n.1 (M.D. Fla. Sept. 16, 2022).

"Parties should feel that a district court has given them their day in court. Because the district court in this case refused to consider their evidence, Plaintiffs did not receive the review to which they were entitled." *Glover v. City of Pensacola*, 372 Fed. Appx. 952, 955-56 (11th Cir. 2010). In this case, as in *Glover*, the court severely and unnecessarily penalized Plaintiff basically for becoming physically incapacitated to the point that she considered that what she was experiencing could potentially be fatal. The pertinent circumstances stated in Professor Reyes's Motion to Replace (Doc. 102) and Motion for Reconsideration (Doc. 130) (and replies), when fully considered, warranted the court's exercise of its inherent power in the interests of justice in favor of Plaintiff's request to submit her Corrected Response and Declaration.

This case, like *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 11th Cir. 1997), "illustrates the mischief that results when a district court effectively abdicates its

---

"discovery had already closed; therefore, [a]llowing the affirmative defenses and counterclaims at this time would: (1) require reopening discovery, (2) prejudice Plaintiff, and (3) delay the timely and efficient resolution of this case." *Id.* at *6-7.

responsibility to manage a case." The court disadvantaged Professor Reyes by not ruling on the Motion to Dismiss until after the time for discovery and summary judgment motions had passed. Then, the court allowed FAMU to file an answer that included thirteen (13) affirmative defenses without allowing Professor Reyes to re-open discovery and have an opportunity to make her own motion for summary judgment. (Doc. 125). In *State Farm Mutual Auto. Ins. Co. v. Complete Care Ctrs., LLC*, No. 6:20-cv-1240-WWB-EJK (M.D. Fla. 2020), the court readily and repeatedly provided several extensions of time to the parties who were both represented by several attorneys. Professor Reyes examined all those extensions of time and the reasons why they were granted in her Time-Sensitive Motion for Court Case Management. (Doc. 145). None of the reasons alleged in *State Farm* rose to the level of exigency as Professor Reyes's reason. Indeed, the court admitted that Professor Reyes's "medical emergency was beyond her control." (Doc. 144 at 4).

The record shows that Professor Reyes diligently prosecuted this action and only asked for discrete extensions of time as needed. Technically, she never missed a deadline. However, she was not able to submit the response to the motion to summary judgment in final form with her declaration. She submitted a draft because she did not want to risk the court deeming the motion unopposed. These are calls that even lawyers representing clients must sometimes make when they face exigent circumstances. Courts have inherent power to look at the entirety of the

circumstances, including that Professor Reyes is proceeding *pro se* after being out of practice for over a decade and that she was terminated by FAMU from her tenured faculty position after fifteen years of employment during discovery in this case. (Doc. 47-1).

The court gave FAMU the benefit of not being sanctioned for its motion for protective order and its refusal to produce President Robinson for deposition after the court ruled that he had to appear. (Docs. 49, 64). Professor Reyes had to file a motion to compel his attendance. (Doc. 50). The court also allowed FAMU to provide an answer that denied many facts that were admitted by its own institutional actors during depositions, which were taken months prior to the filing of FAMU's answer. The court should have given Professor Reyes the same favorable treatment on a matter that was crucial to her case. She spent thousands of dollars to take those depositions and was diligent about obtaining evidence which she introduced during the depositions.

The court *sua sponte* amended its CMSO several times starting on September 25, 2024. (Docs. 98, 132, 136, 151). The parties had to continue working on the pretrial deadlines and preparation of the joint pretrial statement during the Thanksgiving holiday after the court did not rule on any of the emergency motions that were begging for the court's case management. (Docs. 131, 133, 135, 138). The court should have granted Professor Reyes a similar leeway as it granted itself. The

amendment to the CMSO at the time when Professor Reyes requested to be allowed to submit her corrected response and declaration could have as easily have been granted, especially because FAMU knew what Professor Reyes was facing as soon as it happened.

**III.** The district court abused its discretion when it denied Professor Reyes's request to re-open discovery and summary judgment after FAMU filed its answer with thirteen affirmative defenses once the discovery deadline and the deadline to submit motions for summary judgment passed.

Due to the Court's delay in ruling (Doc. 94) on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 35), Plaintiff did not get the benefit of Defendant's Answer and Affirmative Defenses before the discovery deadline and the deadline to file motions for summary judgment. Plaintiff requested that the court reopen discovery and summary judgment related solely to Defendant's Answer, and thirteen Affirmative Defenses for at least sixty (60) days. (Doc. 105 at 5).

Defendant's Answer and Affirmative Defenses violated the general rules of pleading in Federal Rule of Civil Procedure 8(b). Fed. R. Civ. P. 8(b). Many of its denials did not "fairly respond to the substance of the allegation" in violation of Federal Rule of Civil Procedure 8(b)(2). Defendant denied parts of allegations that are obviously true according to its own records, which is a violation of Rule 8(b)(4). For example, Plaintiff stated in her Second Amended Complaint that "then Associate Dean for Research and Faculty Development and Professor of Law Kenneth B.

Nunn" prepared a Memo "(the 'Nunn Memo')," which "was appended to the Self Study that the FAMU College of Law presented to the ABA as part of the law school's application for full accreditation. The law school represented to the ABA that the Nunn Memo clarified the standards as requested by the ABA." (Doc. 34, ¶ 24). Defendant denied these facts which are undisputably stated in its own records, *in materials Defendant presented to the ABA for purposes of law school accreditation*. (Doc. 97, ¶ 24). Plaintiff asserted that her promotion to full professor was denied in violation of the standards provided to her, including the Nunn Memo. (Doc. 75-3 PL(128:10-131:5)).

Similarly, Defendant claimed lack of knowledge or information sufficient to form a belief about the truth of allegations after discovery is already closed and Defendant had the benefit of the evidence readily available to obtain the knowledge or information. Plaintiff stated that she was hired for a tenure-track position. (Doc. 34, ¶ 25). Defendant answered that it "lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, therefore denied" (Doc. 97, ¶ 25) despite the admitted fact that Defendant awarded tenure to Plaintiff because she was hired in the tenure track. Plaintiff stated the race and gender (not national origin) of the faculty members in the College of Law Retention Promotion and Tenure Committee that reviewed her application for tenure. (Doc. 34, at ¶¶ 34-35). Plaintiff confirmed this race and gender information with Defendant's own records, which

she produced for depositions. (Doc. 86 LP(Ex. 33)), (*Id.* PB(Ex. 4)). In response, Defendant answered that it "lacks knowledge or information sufficient to form a belief about each individual's race or national origin, therefore, all remaining allegations are denied." (Doc. 97, ¶¶ 34, 35). Defendant even denied findings of retaliation from its own Division of Audit and Compliance Report. (Doc. 97, ¶ 56); (Doc. 86 PB(Ex. 10)).

At the hearing before the court, when Professor Reyes requested an extension of the discovery deadline to take depositions, which the court denied, the court stated that discovery may need to be re-opened depending on the affirmative defenses raised by defendant, especially if it raised the defense of failure to state a claim upon which relief can be granted, which was FAMU's first affirmative defense. (Doc. 146). The court should have honored what it stated.

## **CONCLUSION**

Based upon the foregoing, this Honorable Court should reverse the ruling below and remand this case for further proceedings. Upon remand, the case should be reassigned to a different district court judge and magistrate judge.

Dated this 8th day of May, 2025.

Respectfully submitted,

/s/ *Maritza Reyes*
Maritza Reyes, Esq., *Pro Se*
P.O. Box 5102
Winter Park, FL 32793
mreyesclaim@gmail.com
305-308-8200
*Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this brief complies the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B). It is typed in proportionally spaced Times New Roman style with a 14-point pitch and complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), as it contains 12,401 words according to Microsoft Word Version 2503.

*/s/ Maritza Reyes*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 8, 2025, I electronically filed the foregoing brief with the Clerk of the Court by using the CM/ECF system, which will send notice to Defendant-Appellee's attorneys.

*/s/ Maritza Reyes*