# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

**MARITZA REYES,**

Plaintiff-Appellant,

v.

**FLORIDA A&M
UNIVERSITY BOARD
OF TRUSTEES ("FAMU"),**

Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Florida

No. 6:22-cv-1525-WWB-DCI

---

## APPELLANT'S REPLY BRIEF

---

Maritza Reyes, *Pro Se*
P.O. Box 5102
Winter Park, FL 32793
mreyesclaim@gmail.com
305-308-8200

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rules 26.1-2, 26.1-3, and 28-1(b) of the Eleventh Circuit Rules, the undersigned Plaintiff-Appellant certifies that the following listed persons and entities have an interest in the outcome of this case:

**Judges**

• Berger, Wendy W., U.S. District Court Judge for the Middle District of Florida

• Hoffman Price, Leslie, U.S. District Court Magistrate Judge for the Middle District of Florida

• Irick, Daniel C., U.S. District Court Magistrate Judge for the Middle District of Florida

• Kidd, Embry J., U.S. Circuit Judge, United States Court of Appeals Eleventh Circuit (former U.S. District Court Magistrate Judge for the Middle District of Florida)

**Appellant-Plaintiff**

• Maritza Reyes, former Professor of Law, FAMU

**Appellee-Defendant - FAMU Board of Trustees (FAMU)**

• Brown, Jamal A., Ph.D., Faculty Senate President

• Bryant, Zayla, Student Senate President

- Cavazos, Ann Marie, Professor of Law, former Trustee

- Cliatt, II, Ottis, former Trustee

- Crossman, John

- Dopson-Rodriguez Jocelyn

- Ellison, Earnie, former Trustee

- Figgers, Natlie G.

- Gainey, Emery A.

- Gibbons, Deveron

- Harper, Kristin

- Lawson, Kelvin, former Trustee

- May, Loryn, former Trustee

- Perry, Jr., Belvin

- Reed, Craig

- Stone, Kenward ("Kenny"), former Trustee

- Vazquez, Raphael

- Washington, TaShaunda ("Nicole")

- White, Michael, former Trustee

**FAMU's Attorneys**

- Coates, Kentayvia L., Esq., Associate General Counsel and Director of Labor Relations, FAMU

- Elijah, Iris A., Esq., Deputy General Counsel, FAMU

- Espino Wydler, Lourdes, Esq., Wydler Law

- Hatcher-Bolin, Kristie, Esq., GrayRobinson, P.A.

- McKnight, Avery, Esq., Vice President and General Counsel, FAMU

- McKenzie, Tiffany, Esq., Assistant General Counsel, FAMU

- Mitchell, Richard ("Rick") E., Esq., GrayRobinson, P.A.

- Reiner, Sarah P. L., Esq., GrayRobinson, P.A.

- Santoro, Maria, A., Esq., Sniffen & Spellman, P.A.

- Self, David C., Esq. Associate General Counsel, FAMU

- Spradley, Susan T., Esq., GrayRobinson, P.A.

- Thomas, Shira, R., Esq., Chief Policy Officer and University Counsel (former Interim Vice President and General Counsel/Chief Policy Officer), FAMU

- Wallace, Doris Denise, Esq., former Vice President and General Counsel/Chief Policy Officer, FAMU

- Ward, Teresa Cooper, Esq., Sniffen & Spellman, P.A.

- Zolty, Julie M., Esq., GrayRobinson, P.A.

## **Other FAMU Employees (including former employees)**

- Abrams, Robert ("Rob"), Professor of Law

- Boothe-Perry, Nicola ("Nicky"), A., former Professor of Law

- Broussard, Patricia ("Pat"), Professor of Law

- Calhoun, Rica, Chief Compliance and Ethics Officer

- Chin, Andrew, D., Associate Professor, Dean of the School of Architecture + Engineering Technology (SAET)

- Cooper, Markita, Professor of Law

- Edington, Maurice, D., former Provost, FAMU

- Fineman, Jonathan, Associate Professor of Law

- Gavin, Carrie, former Director, Office of Equal Opportunity and Labor Relations

- Graham, Mildred, Advancement/Alumni Affairs

- Green, Reginald, M., Associate Dean for Student Services and Administration

- Griffin, Ronald ("Ron"), Professor of Law

- Henslee, William ("Bill"), Professor of Law

- Howard, Cecil, Associate Provost for Academic Programs and Interim Dean of the College of Law

- Johnson, Marva, President

- Jones, Darryll, Professor of Law

- Keller, Deidre, former Dean College of Law

- Langston, Lundy, Professor of Law

- Lawson, Kelvin, Executive Vice President and Chief Operating Officer

- Levitt, Jeremy, Professor of Law

- Maleszewski, Joseph, Vice President for Audit

- Pernell, LeRoy, former Dean

- Perry, Reginald J., Associate Provost for Academic and Faculty Affairs

- Persaud, Shiv, Associate Professor of Law

- Reaves, Rhonda, Professor of Law

- Robinson, Larry, former President

- Saleem, Omar, Professor of Law

- Scott, Latrecha K., Director of Office of Equal Opportunity Programs & Labor Relations/Title IX

- Smith, Jennifer, former Professor of Law

- Snyder, Adrienne, Chief of Staff

- Taite, Phyllis, former Professor of Law

- Watson Allyson, Provost and Vice President for Academic Affairs

- Wesson, Dale G., Interim Dean, College of Agriculture and Food Sciences

- Williams, Eurilynne, A., Associate Professor of Law

**Entities**

- Florida Agricultural and Mechanical University ("Florida A&M University" or "FAMU")

- GrayRobinson P.A., counsel for FAMU

- Sniffen & Spellman, P.A., counsel for FAMU

- Wydler Law, counsel for FAMU

### CERTIFICATE OF COMPLIANCE WITH RULE 26.1-3

I hereby certify that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ *Maritza Reyes*
Maritza Reyes, Esq., *Pro Se*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP) .....................................................C-1

TABLE OF CONTENTS ......................................................... i

TABLE OF CITATIONS.......................................................... ii

REFERENCES TO PARTIES..................................................1

ABBREVIATIONS AND REFERENCES TO THE RECORD ...............................2

ARGUMENT AND CITATIONS OF AUTHORITY ...............................5

FACTUAL AND PROCEDURAL BACKGROUND IN REPLY TO ALLEGATIONS IN FAMU'S BRIEF .......................................................9

ARGUMENT ...................................................................13

   I. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF FAMU ON ALL COUNTS OF PROFESSOR REYES'S TITLE VII CAUSES OF ACTION, WHERE PROFESSOR REYES HAD RECORD EVIDENCE TO SHOW GENUINE DISPUTE AS TO MATERIAL FACTS THAT WOULD ALLOW REASONABLE JURORS TO FIND BY A PREPONDERANCE OF THE EVIDENCE THAT FAMU DISCRIMINATED AND RETALIATED AGAINST HER, BUT THE DISTRICT COURT DID NOT ALLOW HER TO CITE TO HER EVIDENCE. ..................13

   II. THE DISTRICT COURT ERRED WHEN IT DENIED PROFESSOR REYES'S REQUEST TO REPLACE HER RESPONSE IN OPPOSITION TO FAMU'S MOTION FOR SUMMARY JUDGMENT WITH A CORRECTED RESPONSE AND DECLARATION WITH CITATIONS TO THE RECORD AND AFFIDAVITS. ...........................................................17

   III. THE DISTRICT COURT ERRED WHEN IT DENIED PROFESSOR REYES'S REQUEST TO RE-OPEN DISCOVERY AND SUMMARY JUDGMENT AFTER FAMU FILED ITS ANSWER WITH THIRTEEN AFFIRMATIVE DEFENSES ONCE THE DISCOVERY DEADLINE AND THE DEADLINE TO SUBMIT MOTIONS FOR SUMMARY JUDGMENT PASSED… ........................................................26

CONCLUSION .................................................................33

CERTIFICATE OF COMPLIANCE ..................................................................34

CERTIFICATE OF SERVICE .........................................................................34

## **TABLE OF CITATIONS**

**Cases**

*Barfield v. Brierton*, 883 F.2d 923, 930 (11th Cir. 1989)...........................................6

*Islamic Republic of Iran v. Boeing Co.*, 739 F.2d 464, 465 (9th Cir. 1984) ............17

*\*Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018)....................6

*United States v. Remillong*, 55 F.3d 572, 577-78 (11th Cir. 1995) ..........................33

*United States v. Wrice*, 954 F.2d 406, 408-409 (6th Cir. 1992) ...............................17

**Statutes**

28 U.S.C. § 2106 ........................................................................................................33

**Rules**

11th Cir. R. 26.1-2 ..................................................................................................C-1

11th Cir. R. 26.1-3 ..................................................................................................C-1

11th Cir. R. 28-1(b) .................................................................................................C-1

Fed. R. App. P. 26.1.................................................................................................C-1

Fed. R. App. P. 28(d) ...................................................................................................1

Fed. R. App. P. 32(a)(7)(B) ......................................................................................35

Fed. R. Civ. P. 12(a)(4).............................................................................................30

Fed. R. Civ. P. 12(b)(6) ............................................................................................30

## REFERENCES TO PARTIES

In accordance with Federal Rule of Appellate Procedure 28(d), Plaintiff-Appellant, Maritza Reyes, references herself in this Brief as "Professor Reyes"[1] and references Defendant-Appellee, Florida A&M University Board of Trustees (FAMU), as "FAMU". Fed. R. App. P. 28(d). The designations "Plaintiff" and "Defendant" are sometimes used to reference some of the materials filed in the lower court. *Id.*

---

[1] Per the Rule (rather than use Appellant), Professor Reyes will use her "Professor" designation as during the time period encompassed in her pleadings, when she was employed as a professor in the FAMU College of Law for fifteen (15) years. (Docs. 1; 10; 34; 47-1; 106-1). Professor Reyes was noticed for dismissal and wrongfully terminated from her tenured faculty position during the period of Feb. 16, 2024 – April 5, 2024, *during the discovery phase in the court below*. (Doc. 106-1).

## **ABBREVIATIONS AND REFERENCES TO THE RECORD**

1.  Citations in the format (D.E. or D.Es.) shall refer to document number(s) of materials filed in this Court in Case No. 25-10453-G.

2.  Citations in the format (Doc. or Docs.) shall refer to document number(s) of materials filed on the Case Docket for Case No. 6:22-cv-01525-WWB-DCI in the United States District Court for the Middle District of Florida.

3.  Citations in the format (I.B.)[2] shall refer to citations to Professor Reyes's Opening Brief. (D.E. 21).

4.  Citations in the format (F.B.) shall refer to FAMU's Answer Brief. (D.E. 24).

5.  Citations in the format (R.B.) shall refer to Professor Reyes's Reply Brief (this Brief). (presumably D.E. 29).[3]

6.  Citations to page numbers of the briefs are to the page numbers at the bottom of the pages of the briefs, not to the electronic page numbers of the PDF documents.

7.  Some citations also include page number(s) and/or paragraph number(s) when applicable, *e.g.,* (Doc. # at #, ¶ #).

---

[2] FAMU used the abbreviation I.B. to refer to Professor Reyes's Opening Brief. To be consistent, for purposes of this appeal, Professor Reyes will retain the I.B. abbreviation.

[3] Because this Brief has not yet been filed, a docket entry number has not been assigned. This Brief was re-filed to comply with the directive issued by this Court on September 2, 2025. According to a review of the docket sheet on September 2, 2025, the next docket entry number is supposed to be number 29.

8.   There were only two (2) hearings in the case below.[4] Citation to the transcripts of those two discovery hearings (Docs. 140; 146) will be to the docket entry number of the transcript at page number:line number or numbers, *e.g.,* (Doc. # at #:#), (Doc. # at #:#-#). For both transcripts, the page numbers that appear in the header generated by the District Court's electronic filing system are the same as the page number assigned by the court reporter.

9.   The document number for the audio recordings, surveillance videos, and deposition transcripts (with exhibits) that Professor Reyes filed on August 12, 2024, as record evidence, is the same because the materials were filed in the District Court via a USB drive due to their large size. (Doc. 86).[5]

10.These are the abbreviations for the deposition transcripts: Professor Maritza Reyes – PL (which stands for Plaintiff); President Larry Robinson – LR; Professor (former Dean) LeRoy Pernell – LP; and Professor Patricia (Pat) Broussard – PB. The

---

[4] The transcript at Doc. 140 is for a hearing held on June 18, 2024, on Plaintiff's Expedited Short-Form Discovery Motion for Extension of Discovery Deadline and Dispositive and *Daubert* Motions Deadline if Necessary (Doc. 51). The transcript at Doc. 146 is for a hearing held on May 13, 2024, on Defendant's Time-Sensitive Motion for Protective Order Precluding the Deposition of Dr. Larry Robinson (Doc. 37).

[5] Professor Reyes contacted the Clerk's Office of the U.S. District Court for the Middle District of Florida to ascertain the procedure to forward the USB drive to the Eleventh Circuit Court of Appeals. The Clerk's Office responded that the Clerk of the Eleventh Circuit will request it. Professor Reyes also contacted the Clerk's Office of the Eleventh Circuit, and they confirmed that they will request the USB drive once briefing is complete.

citations to the deposition transcripts include page and line numbers for single and multiple pages and lines with a dash for a range of pages or lines and semicolons to divide pages, *e.g.,* PL(page#:line#), PL(page#:line#; page#:line#-page#:line#), PL(page#:line#-page#), or PL(page#-page#).

11. Citations to exhibits that were introduced during each deposition are cited in this format: PL(Ex. #) or PL(Ex. # at page#).

<u>**ARGUMENT AND CITATIONS OF AUTHORITY**</u>

This is not a case that was decided against Professor Reyes on summary judgment for lack of evidence. This is a case in which the District Court granted summary judgment to FAMU because of *lack of citations* to record evidence after the District Court did not allow Professor Reyes to provide those citations. (I.B. 47-50; Docs. 102, 103, 124, 130, 130-1, 139, 144). FAMU misleadingly argues that Professor Reyes is citing, "for the first time on appeal," to "facts and evidence that were not included in the District Court's review at summary judgment." (F.B. at 17).[6] However, that is precisely the issue—that the District Court did not allow Professor Reyes to cite her record evidence even though she had already filed her evidence in the District Court on August 12, 2024. (Doc. 86).

On August 19, 2024, Professor Reyes became unexpectedly, medically, and physically incapacitated and had to make the tough decision of submitting a Draft Response (Doc. 91) to FAMU's Motion for Summary Judgment rather than not submitting anything and risking the District Court treating FAMU's Motion for Summary Judgment as unopposed.[7] Professor Reyes diligently informed the District

---

[6] FAMU cited to I.B. 62-63; however, that is the pagination of the PDF document, not the pagination in the Brief. The pages in the Brief are 50-51.

[7] Professor Reyes "characterized the filing of her draft Response as an 'emergency decision' 'to avoid having the Court deem the Motion for Summary Judgment unopposed.'" (Doc. 130 at 10, n.13) (citing Doc. 102, ¶ 11). In its Brief, FAMU acknowledged that this may have happened. (F.B. at 17).

Court of her medical circumstances and sought relief via motion practice as soon as she was medically and physically able to do so.[8] Professor Reyes filed a Time-Sensitive Notice (Doc. 92), followed by a substantive Time-Sensitive Motion with supporting affidavits (Docs. 102, 107, 107-2), followed by a Motion for Reconsideration with a "Diligence Timeline" (Docs. 130, 130-1).

Pursuant to Federal Rule of Civil Procedure 6(b)(1)(B) and in the interests of justice, Professor Reyes requested to be allowed to file a Corrected Response and Declaration with citations to the record. (Doc. 102 at 12-23). The District Court denied Professor Reyes's requests. (Docs. 124, 144).[9]

The way in which the District Court managed the case disadvantaged Professor Reyes. FAMU had knowledge of Professor Reyes's allegations since November 18, 2022. (Docs. 10, 17). Professor Reyes, on the other hand, received FAMU's Answer and thirteen (13) Affirmative Defenses on September 23, 2024, after the May 31, 2024 discovery deadline and the July 2, 2024 deadline for dispositive motions. (Docs. 97, 26). The District Court denied (Doc. 125) Professor Reyes's Time-Sensitive Motion to Re-Open Discovery and Summary Judgment (Doc. 105), which

---

[8] "The Local Rules require that parties must seek relief by way of a motion. Middle District L.R. Rule 3.01(k)." (Doc. 102 at 3 n.2).

[9] "'[T]he appeal from a final judgment draws in question all prior non-final orders and rulings which produced the judgment.'" *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) (quoting *Barfield v. Brierton*, 883 F.2d 923, 930 (11th Cir. 1989)).

6

FAMU opposed (Doc. 118), despite both the District Court and FAMU representing, during a discovery hearing on June 18, 2024, that Professor Reyes should get an opportunity to conduct discovery and file dispositive motions after receiving FAMU's Answer and Affirmative defenses (especially if FAMU raised the affirmative defenses it ultimately pleaded). (Doc. 140 at 25-27; 30-31).[10]

Between November 19, 2024, and December 11, 2024, Professor Reyes filed four (4) emergency motions and one (1) time-sensitive motion requesting case management (including a joint motion). (Docs. 131, 133, 135, 138, 145). The Court did not rule on any of them. Professor Reyes and FAMU's counsel had to continue meeting the District Court's pretrial deadlines without the guidance they needed. The District Court did not schedule a single status conference in the case despite the requests for case management. The Court *sua sponte* amended the CMSO four (4) times to fit its schedule. (Docs. 98, 132, undocketed number on November 29, 2024, 151). These *sua sponte* amendments demonstrated how easily the District Court could have changed the CMSO deadlines to provide the relief Professor Reyes requested.

---

[10] The discovery hearing took place after Professor Reyes filed an Expedited Motion for Extension of Time to Complete Discovery (Doc. 51). (Doc. 140). This was at a time when FAMU's Motion to Dismiss Professor Reyes's Second Amended Complaint remained pending and FAMU was obstructing and delaying scheduling depositions. (*Id.* at 21-23; 24-27; 30-31).

In her Opening Brief, Professor Reyes cited material and relevant record evidence to clarify for this Court what happened in this case and support why the District Court's summary judgment decision and final judgment should be reversed. As Professor Reyes stated in her request for oral argument, "[t]his case is fact-intensive, including as to the procedural record (the parties' filings and the orders) in the court below." (I.B. at i). Therefore, it is extremely important to scrutinize the actual record in the case below and not be misled by allegations in FAMU's Brief that are contrary to the record.[11]

For the reasons stated in Professor Reyes's Opening Brief, this Brief, and in the materials filed in the District Court, this Court should find that the District Court abused its discretion when it denied Professor Reyes's requested relief and that it should not have granted summary judgment in favor of FAMU.

---

[11] By way of example of FAMU's blatant misrepresentations, in its Brief, FAMU stated that Professor Reyes "requested three prior extensions for the same medical reasons she cited for her alleged inability to file the corrected response." (F.B. at 6-7). FAMU cited to Doc. 124 without a pinpoint citation. However, FAMU's allegation is not stated anywhere in the District Court's Order (Doc. 124). The allegation is also contrary to what Professor Reyes stated in the three (3) motions for extension of time. (Docs. 79, 82, 87). It is also contrary to what Professor Reyes stated in her Diligence Affidavit (Doc. 130-1 at 4-5, ¶ 10).

## FACTUAL AND PROCEDURAL BACKGROUND IN REPLY TO ALLEGATIONS IN FAMU'S BRIEF

This section includes a timeline of some of the filings in the court below. The District Court's Case Management and Scheduling Order ("CMSO") (Doc. 26) stated the following deadlines:

| Disclosure of Expert Reports | | |
|---|---|---|
| | **Plaintiff:** | **April 2, 2024** |
| | **Defendant:** | **May 2, 2024** |

| Discovery Deadline | May 31, 2024 |
|---|---|
| **Dispositive Motions, and *Daubert* Motions** | **July 2, 2024** |

| All Other Motions Including Motions *In Limine* | October 2, 2024 |
|---|---|

On **October 9, 2023**, Professor Reyes filed her Second Amended Complaint, which is the operative complaint for purposes of this appeal. (I.B. at 4; Doc. 34). On **October 23, 2023**, FAMU filed a Motion to Dismiss Professor Reyes's Second Amended Complaint with Prejudice or in the Alternative Motion to Strike. (Doc. 35). On **May 31, 2024**, the discovery deadline ended. On **July 2, 2024**, FAMU filed its Motion for Summary Judgment. (Doc. 76). On **July 17, 2024**, **August 2, 2024**, and **August 12, 2024**, Professor Reyes filed unopposed motions for short extensions of time to respond to FAMU's Motion for Summary Judgment. (Docs. 79, 82, 87). Each extension of time was prompted by different exigent circumstances. (*Id.*) Those extensions together changed the deadline to respond from **August 1, 2024 to August**

**19, 2024**. (Docs. 80, 83, 89). On **August 12, 2024**, Professor Reyes submitted her record evidence to the District Court. (I.B. at 8; Doc. 86). On **August 19, 2024**, Professor Reyes filed her Response to FAMU's Motion for Summary Judgment. (Doc. 91).

On **September 3, 2024**, Professor Reyes filed a five-page Time-Sensitive Notice informing the District Court that she was facing unexpected medical circumstances; that the Response she filed to FAMU's Motion for Summary Judgment was a "Draft Response," not a final Response and Declaration; and that she was still recovering from the medical situation. (Doc. 92). After that filing, that same day, **September 3, 2024**, FAMU filed its Reply to Professor Reyes's Draft Response to the Motion for Summary Judgment. (Doc. 93). "[FAMU]'s six-page Reply was basically limited to arguing that the Court should grant its Motion for Summary Judgment based on the 'procedural technicality' that [Professor Reyes] did not cite to evidence in her draft Response and did not submit her Declaration." (Doc. 130 at 16).

On **September 9, 2024** (over a year after the pending motion to dismiss became "ripe" and months after the discovery deadline and the deadline to file motions for summary judgment), the District Court denied FAMU's Motion to Dismiss Professor Reyes's Second Amended Complaint. (Doc. 94). On **September 23, 2024**, FAMU filed its Answer and Affirmative Defenses. (Doc. 97). **On September 25, 2024**, the Court, *sua sponte*, amended the CMSO and changed the remaining deadlines for the

10

Meeting in Person to Prepare Joint Final Pretrial Statement (to November 22, 2024), Joint Final Pretrial Statement (to December 2, 2024), Trial Status Conference (to December 10, 2024), and beginning of Trial Term (to February 3, 2025). (Doc. 98 at 1-2).

On **October 2, 2024**, *in compliance with the CMSO's deadline for all motions,* Professor Reyes filed a Time-Sensitive Motion to Replace Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment with Plaintiff's Corrected Response in Opposition to Defendant's Motion for Summary Judgment and for the Court to Accept Plaintiff's Declaration ("Motion to Replace"), [12] which was opposed by FAMU. (Docs. 102; 113). On **October 2, 2024**, Professor Reyes filed a Time-Sensitive Motion to Re-open Discovery and Summary Judgment, which was opposed by FAMU. (Docs. 105; 118). On **October 15, 2024**, Professor Reyes filed Plaintiff's Motion to Strike Defendant's Affirmative Defenses, which was opposed by FAMU. (Docs. 112, 122).[13] On **October 29, 2024**, FAMU filed its Response in Opposition to Plaintiff's Motion to Strike. (Doc. 122).

---

[12] Professor Reyes's Motion to Replace also included six (6) supporting declarations. (Docs. 103, 107, 107-2).

[13] Professor Reyes diligently sought and received confirmation from the District Court that she could file her Motion to Strike Defendant's Answer and Affirmative Defenses pursuant to the deadline provided by Federal Rule of Civil Procedure 12(f)(2) and not the October 2, 2024 deadline for all motions. (Docs. 99, 100). On October 14, 2024, Professor Reyes filed her Time-Sensitive Motion for Extension of Time requesting a five-day extension to file her Motion to Strike and her Response to Defendant's Omnibus Motion *in Limine* due to issues dealing with two unexpected

On **November 1, 2024**, the District Court entered three (3) separate Orders denying (1) Plaintiff's Time-Sensitive Motion to Replace Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment with Plaintiff's Corrected Response in Opposition to Defendant's Motion for Summary Judgment and for the Court to Accept Plaintiff's Declaration (Doc. 102); (2) Plaintiff's Motion to Reopen Discovery and Summary Judgment (Doc. 105); and (3) Plaintiff's Motion to Stay Case Pending Exhaustion of Administrative Remedies After Wrongful Termination (Doc. 106). (Docs. 124, 125, 126). On **November 4, 2024**, the District Court entered its Order denying Plaintiff's Motion to Strike Defendant's Affirmative Defenses (Doc. 112). (Doc. 127).[14]

On **November 15, 2024**, Professor Reyes filed Plaintiff's Time-Sensitive Motion for Reconsideration of Court's Order (Doc. 124) Denying Plaintiff's Time-Sensitive

---

hurricanes (Helene followed by Milton). (Doc. 110). Prior to filing the Motion, Professor Reyes conferred in good faith with FAMU's counsel, but FAMU's counsel opposed the <u>five-day</u> extension of time. On October 15, 2024, FAMU filed a Response in Opposition to Plaintiff's Time-Sensitive Motion for Extension of Time. (Doc. 111). By the time of the deadlines to file her Motion to Strike (October 15) and Response (October 16), the Court had not yet ruled on Professor Reyes's Time-Sensitive Motion for Extension of Time. On October 22, 2024, the Court denied Professor Reyes's Time-Sensitive Motion for Extension of Time as moot after Professor Reyes filed her Motion to Strike (Doc. 112) and Response (Doc. 117) by the deadlines. (Doc. 119).

[14] The District Court denied Professor Reyes's Motion to Strike based largely on the District Court's adoption of FAMU's misrepresentation that Professor Reyes did not comply with conferral as required by Local Rule 3.01(g) and the CMSO. (Doc. 127 at 1-2).

Motion to Replace Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment with Plaintiff's Corrected Response and for the Court to Accept Plaintiff's Declaration (Doc. 102). (Doc. 130). On **December 10, 2024**, the District Court issued its Order denying Plaintiff's Time-Sensitive Motion for Reconsideration (Doc. 130) of Court's Order (Doc. 124) Denying Plaintiff's Time-Sensitive Motion to Replace Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment with Plaintiff's Corrected Response and for the Court to Accept Plaintiff's Declaration (Doc. 102). (Doc. 144).[15]

On **December 18, 2024**, Professor Reyes moved for reconsideration of the Order denying Plaintiff's Motion to Strike Defendant's Affirmative Defenses. (Doc. 147). On **January 10, 2025**, the District Court granted FAMU's Motion for Summary Final Judgment. (Doc. 153).

## ARGUMENT

**I. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF FAMU ON ALL COUNTS OF PROFESSOR REYES'S TITLE VII CAUSES OF ACTION, WHERE PROFESSOR REYES HAD RECORD EVIDENCE TO SHOW GENUINE DISPUTE AS TO MATERIAL FACTS THAT WOULD ALLOW REASONABLE JURORS TO FIND BY A PREPONDERANCE OF THE EVIDENCE THAT FAMU DISCRIMINATED AND RETALIATED AGAINST HER, BUT THE DISTRICT COURT DID NOT ALLOW HER TO CITE TO HER EVIDENCE.**

---

[15] The District Court denied Professor Reyes's Motion for Reconsideration (Doc. 130) without allowing her to file a reply (Doc. 139). (Doc. 144).

In its Brief, FAMU mischaracterized that "Appellant's primary argument is that this case was not decided on the merits due to 'the onset of physical incapacity.'" (F.B. at 13). FAMU conveniently and misleadingly left out this important language: "*evidence that Professor Reyes placed in the record but could not use*." (I.B. at 45) (emphasis added). Professor Reyes fully stated in the first line of her summary of the argument: "This case was not decided on the merits of the evidence that Professor Reyes placed in the record but could not use due to the onset of physical incapacity." (*Id.*).

On **August 12, 2024**, a week before she filed her Draft Response on **August 19, 2024**, Professor Reyes submitted her record evidence to the District Court. (I.B. at 8; Doc. 86). In her Opening Brief, Professor Reyes detailed the nature of all this evidence. (I.B. at 8-10). That evidence included FAMU's institutional documents, audio recordings, and surveillance videos. (*Id.* at 8-9; Doc. 86). It also included four (4) deposition transcripts of key factual witnesses and 117 exhibits in total. (I.B. at 9-10; Doc. 86). Professor Reyes also had a world-renowned expert on workplace mobbing (including workplace mobbing in universities), Dr. Kenneth Westhues, as an expert witness. (I.B. 7; Docs. 74-1; 81-1). Professor Reyes submitted six (6) witness declarations in support of her Motion to Replace her Draft Response with a Corrected Response and Declaration. (I.B. at 17).

Despite FAMU's allegation to the contrary in its Brief (F.B. 17), in her Opening Brief, Professor Reyes included record citations to specific portions of President Larry Robinson's deposition (which referenced exhibits that were also record evidence) in which he admitted that the reasons that the RPT Committee, Dean LeRoy Pernell, the University Committee, Provost Maurice Edington, and President Robinson used to deny promotion to Professor Reyes were contrary to the record of her scholarship and the applicable standard. (I.B. 32-35; 38-39) (citing to deposition and exhibits). Also, despite FAMU's allegation to the contrary (F.B. 17), President Robinson additionally admitted that Professor Reyes complained to him about the discrimination, hostile work environment, and retaliation for years, starting in 2013 when he was the Provost and she asked for his help repeatedly; however, he never followed up with her or inquired whether anyone followed up with her. (I.B. at 39-41). As Professor Reyes alleged in her Second Amended Complaint, President Robinson was part of the discrimination, retaliation, and hostile work environment against Professor Reyes. Therefore, FAMU sought to preclude his deposition. As documented in Professor Reyes's Opening Brief, President Robinson's deposition proved that there were blatant contradictions between what he and Provost Maurice Edington stated in their affidavits and what happened. President Robinson participated in the decision to deny promotion to Professor Reyes.

Professor Patricia Broussard admitted that she was a member of the RPT Committee and the only representative of the College of Law in the University Committee that reviewed Professor Reyes's applications. (I.B. 43) (citing to deposition). Professor Broussard also admitted that she voted to deny every application that Professor Reyes submitted (for tenure and promotion). (I.B. at 43) (citing to deposition). When confronted with evidence (including surveillance videos and documents), Professor Broussard admitted the many ways in which she sought to harm Professor Reyes, including by physically harassing her. (I.B. at 41-43). Professor Broussard was one of a group of tenured Black female faculty members whom Professor Ronald Griffin, a tenured Black male professor, characterized as "malicious, evil, racist and vile" against Professor Reyes during an RPT Committee when those women were derailing Professor Reyes's tenure process. (I.B. 24) (citing Dean LeRoy Pernell's deposition). Those women were also members of the RPT Committee that voted to deny promotion to Professor Reyes when she first applied in 2018. (I.B. 29) (citing Dean Pernell's deposition).

To support its Motion for Protective Order, FAMU submitted President Robinson's affidavit wherein he conveniently stated that he did not participate in the decision to deny promotion to Professor Reyes. (I.B. at 34). However, during his deposition, he admitted that what he stated in his affidavit is contrary to what is stated in the University's documents. (I.B. at 34). He also admitted that he discussed

the decision to deny Professor Reyes's promotion with Provost Edington. (I.B. at 34). President Robinson's contradictions and misrepresentations in his affidavit and deposition created genuine issues of material fact that warranted denial of summary judgment. The depositions of Professor Broussard and former Dean Pernell with all the exhibits demonstrated discrimination, hostile work environment, and retaliation. Professor Reyes submitted ample record evidence for her case to proceed before a jury.

## II. THE DISTRICT COURT ERRED WHEN IT DENIED PROFESSOR REYES'S REQUEST TO REPLACE HER RESPONSE IN OPPOSITION TO FAMU'S MOTION FOR SUMMARY JUDGMENT WITH A CORRECTED RESPONSE AND DECLARATION WITH CITATIONS TO THE RECORD AND AFFIDAVITS.

*Pro se* parties, lawyers, law professors, and judges are human and susceptible to unexpected illness.[16] As documented in Professor Reyes's Opening Brief and the record below, Professor Reyes succumbed to the human condition when she became unexpectedly physically incapacitated. Those were desperate times.

It is important to note that FAMU does not have clean hands. It noticed Professor Reyes (a tenured professor with fifteen (15) years of employment without prior

---

[16] *See United States v. Wrice*, 954 F.2d 406, 408-409 (6th Cir. 1992) (finding excusable neglect where attorney explained to trial court that he was suffering from severe depression which caused his tardiness in requesting extension of time); *Islamic Republic of Iran v. Boeing Co.*, 739 F.2d 464, 465 (9th Cir. 1984) (finding excusable neglect when counsel was physically and mentally incapacitated at time for filing appeal).

disciplinary action) for dismissal on February 16, 2024, for sending emails on February 5-6, 2024. (Docs. 47-1; 106-1). Professor Reyes made the District Court aware of what she was dealing with via a sworn declaration she filed on May 23, 2024. (Doc. 47-1). She filed that declaration in support of her Time-Sensitive Motion for Excusal from Mediation. (Doc. 47). She explained to the District Court that she was now unemployed and could no longer afford to pay for a private mediator. (*Id.* at 2-3). She sought a settlement conference before a magistrate judge, which FAMU opposed. (*Id.* at 3; Doc. 53).[17]

In opposition to Professor Reyes's request to be allowed to submit her Corrected Response and Declaration, FAMU argued (same as in its Brief) that Professor Reyes "was granted three *unopposed* extensions of time to respond to FAMU's summary judgment motion." (F.B. at 21). In its repeated references to those short extensions, FAMU never stated that those extensions added together to a mere eighteen (18) days from **August 1, 2024 to August 19, 2024**. (Docs. 79, 82, 87).[18] Moreover,

_____

[17] In said Motion, Professor Reyes also explained that FAMU's counsel refused to give her a few extra days to confer with her expert about his report; the expert was traveling. The deadline to submit the expert's report was April 2, 2024 and Professor Reyes had been busy with preparations for a predetermination conference to try to stop the termination, which was due to be effective on April 5, 2024.(Doc. 47 at 3, n.3).

[18] FAMU sought and received an unopposed extension of <u>forty-five (45) days</u> to respond to Professor Reyes's Amended Complaint. (Docs. 13, 16). FAMU's unopposed Motion was four pages (including the Certificate of Service on page four) and only cited to Rule 6(b) for its analysis of "good cause" for the extension. The District Court granted FAMU's Motion without warning FAMU regarding what

FAMU misrepresented that the District Court noted that the reason for those prior requests was the same medical reason stated in the Motion to Replace, which the District Court denied. (F.B. at 6-7) (citing Doc. 124).[19]

FAMU also did not state that Professor Reyes contacted FAMU's counsel, on **August 22, 2024**, the day when she got cleared by her ophthalmologist to resume computer use. (Doc. 92 at 3, ¶¶ 5, 7). However, she was still recovering, her vision was not back to normal, and she had to "pace her computer use and take breaks from the computer, sometimes for a day or two." (*Id.* at 2-3 ¶ 5). On **August 23, 2024**,

---

qualifies as good case as it did to Professor Reyes when she filed an unopposed Motion to Extend Time to File a Second Amended Complaint. (Compare Doc. 16 and 33). Subsequently, FAMU used that Order to claim that Professor Reyes had already been warned by the District Court about failing to meet the good cause standard. The District Court also "cautioned" Professor Reyes that "a motion to extend a deadline does not toll the deadline at issue while the motion pends." (*Id.*). Professor Reyes had that admonition in mind when she decided to file a Draft Response at the onset of the vision impairment rather than wait until she was physically able to file an emergency motion for extension of time.

[19]Professor Reyes sought the first extension of time (seven (7) days) because she is her mother's sole caregiver and had to take her mother to the hospital on an emergency basis due to an unexpected medical issue. (Doc. 79, ¶ 3). Professor Reyes sought the second extension of time (four (4) days) because she had to take her mother to South Florida for medical treatment (for the unexpected medical issue) and, while there, both Professor Reyes and her mother contracted COVID for the first time since the pandemic began, which added to the medical burdens Professor Reyes and her mother were facing. (Doc. 82, ¶ 3). Additionally, Professor Reyes had to prepare for a storm after the Governor declared a state of emergency. (*Id.*, ¶ 4). Professor Reyes sought a third extension of time (seven (7) days) because "she did not expect that COVID would be as difficult and would exacerbate other medical issues." (Doc. 87, ¶ 3). (Doc. 130-1 at 4-5, ¶ 10).

Professor Reyes once again reached out to FAMU's counsel asking if they knew about "a procedure for accommodations for lawyers or *pro se* parties who face medical issues during a lawsuit." (*Id.* at 3, ¶ 8). On **August 24, 2024**, FAMU's counsel responded that "they [we]re not aware of anything regarding accommodations and the issue ha[d] not come across in their practice." (*Id.* at 3, ¶ 9). She also reached out to FAMU's counsel on **August 26, 2024**, but received an out-of-office reply. (*Id.* at 4, ¶ 13).

Professor Reyes, while still dealing with her unexpected medical circumstances, was diligent about alerting FAMU's counsel about her medical situation. Professor Reyes even told FAMU's counsel that she planned to file a motion to seek the District Court's relief and would ask the District Court to grant FAMU fourteen (14) days to file a reply. (*Id.* at 4, ¶ 12). Although she was still not well enough to prepare said motion, Professor Reyes wanted to alert the District Court about her medical situation. However, nothing in the Local Rules or the Court's website provided any procedure to alert the District Court. (*Id.* at 5, ¶ 17). Therefore, on **September 3, 2024**, Professor Reyes contacted the District Court Clerk's office, and they suggested that a notice may be proper. (*Id.* at ¶ 18). In her Notice, Professor Reyes specifically stated that she needed time to recover from the onset of the medical visual impairment and planned to seek the Court's relief by way of a motion by the CMSO's deadline to file "[a]ll other Motions" – **October 2, 2024**. (*See generally* Doc. 92).

Professor Reyes needed time to recover and pace the computer work required to research, prepare, and file the twenty-three-page Time-Sensitive Motion to Replace her Draft Response with her Corrected Response and Declaration ("Motion to Replace"), which she filed on **October 2, 2024**, *in compliance with the CMSO*. (Doc. 102). Professor Reyes also filed six (6) witness declarations in support of her Motion to Replace. (Docs. 107, 107-2). In her Motion to Replace, Professor Reyes included an entire section to factually support why FAMU would not be prejudiced by the relief requested in her motion. (Doc. 102 at 12-13, ¶¶ 30-33).

In her Motion to Replace, Professor Reyes supported why she met the standard for relief under Federal Rule of Civil Procedure 6(b)(1)(B). (Doc. 102). FAMU filed a seven-page response in opposition to the Motion to Replace. (Doc. 113). Regarding the alleged prejudice to FAMU, FAMU only stated that it would have "to file a supplemental reply to encompass new facts and issues raised by the Plaintiff in her untimely filings." (Doc. 113 at 4, ¶ 10). *In her Motion to Replace, Professor Reyes addressed everything that the District Court said that she did not address and detailed how in her Time-Sensitive Motion for Reconsideration. (Doc. 130), which the Court also denied.* (Doc. 144).

As it did repeatedly in the court below (*see e.g.,* Doc. 118 at ¶ 8), in its Brief, FAMU argued that Professor Reyes "failed to exercise diligence under the good cause standard" because she did not propound any written discovery requests and

waited until March 2024 to schedule depositions. (F.B. at 24).[20] However, Professor Reyes exercised such a high level of diligence that she obtained and provided ample evidence for her allegations to the Equal Employment Opportunity Commission *even before she filed her lawsuit against FAMU*. (Doc. 13 at 1-2, ¶ 2). Since its first appearance in the case below, FAMU admitted that it obtained Professor Reyes's "related Equal Opportunity Commission file[, which] contain[ed] more than 1,000 pages." (*Id.*). Because she had evidence, Professor Reyes was able to include well-supported allegations in her pleadings, which FAMU sought to avoid at all costs. Moreover, in its Reply to Professor Reyes's Draft Response, FAMU complained that Professor Reyes "submit[ted] copious amounts of documents in support of her position," and also argued that she did not cite how they supported her claims. (Doc. 93 at 5). This is exactly what Professor Reyes sought to do in her Corrected Response and Declaration; however, FAMU also opposed that simple request and the District Court went along. As Professor Reyes explained to the District Court, Professor Reyes had plenty of evidence before she filed the lawsuit; this avoided additional

---

[20] FAMU and its counsel delayed scheduling depositions until after the discovery deadline and then refused to make their administrators available absent a Court order extending the discovery deadline. When Professor Reyes sought this extension, FAMU opposed it. (Docs. 51, 55).

court time litigating over discovery matters (like she had to litigate to be able to take a deposition of a key fact witness who was under FAMU's control):[21]

```
1          So with regards to, you know, the factual accusation
2     that I didn't make a single request for discovery, I have --
3     like I said, I have discovery that I had obtained.  And I can
4     just imagine the contentious discovery issues that would have
5     arisen if I had been fighting for requests for productions and
6     requests for interrogatories.  We would have been here, you
7     know, hearing about those as well.
```

(Doc. 140 at 46:1-7).

Absent FAMU's dilatory and obstructive tactics and the wrongful dismissal,[22] Professor Reyes would've had sufficient time to conduct the few depositions she planned to conduct during spring 2024 (before the discovery deadline). Professor

---

[21] Most discovery filings, hearings, and orders had to do with FAMU's refusal to make then President Larry Robinson (a key witness with personal knowledge and involvement in the allegations of wrongdoing against Professor Reyes) available for deposition. (Docs. 37-40, 43, 45, 49-50, 52, 54, 56-57, 60, 64). Professor Reyes began trying to schedule President Robinson's deposition since March 2024. (Doc. 51-3 at 12-13). Between May 7, 2024 and June 20, 2024, the parties required the Court's assistance mainly with deposition discovery matters, which were necessitated by FAMU's and FAMU's counsel's refusal to conduct deposition practice with the spirit of cooperation and civility required by the Middle District's Discovery Manual. (Docs. 37-40, 42-46, 48-52, 54-57, 60-64, 67-72).

[22] When Professor Reyes sought an extension of the discovery deadline, she explained to the District Court that, after she was noticed for dismissal on February 16, 2024, she had "been busy dealing with the wrongful dismissal." (Doc. 51-1 at 1, ¶ 4).

Reyes informed the District Court that she did not expect that FAMU's counsel would aid FAMU to avoid scheduling the depositions (Doc. 140 at 35-37) or that she would be wrongfully terminated and thrown into additional turmoil, including in FAMU's internal procedures wherein she had to defend her reputation, job, and career, such as a predetermination conference on March 26 2024. (*See generally* Docs. 51; 51-1; 51-2; 51-3). FAMU had total control of the deadlines and process in its internal procedures. (Doc. 51-1 at 4-5, ¶ 20). Professor Reyes made the District Court aware of this during a hearing on May 13, 2024:

```
 9          And as far as the deposition scheduling, I have to
10     say that a lot of, you know, changes have happened that were
11     not within plaintiff's control, including that at the beginning
12     of February, defendant wrongfully and in bad faith suspended
13     me, plaintiff, from my job, from my tenured position and
14     dismissed me from my tenured position and has had me since
15     February fighting the internal process to try to keep my job
16     and defend against the false allegations.  And so they've had
17     me fighting, fighting, fighting; and that -- that took time
18     from the time that I had scheduled for, you know, the work that
19     I was going to be doing in this case.
20          And I -- and I -- you know, and I believe that it is
21     in bad faith, Your Honor, the way that it was done.  I was a
22     tenured professor who worked at the law school for 15 years;
23     and wrongfully, all of a sudden, they fired me.
```

(Doc. 146 at 9:9-23).

Professor Reyes timely sought extensions of time; however, even with everything she was dealing with, ***she did not miss any deadlines***. When she sought an extension of the discovery deadline, she explained to the District Court that she waited until the day of the deadline to do so because she was engaged in ongoing conferral with FAMU's counsel trying to agree to a resolution that she may present to the District Court. (Doc. 51 at 2, n.2). At that time, FAMU was still refusing to make President Robinson available for deposition despite a District Court Order on **May 24, 2024,** denying FAMU's Motion for Protective Order and ordering President Robinson's deposition to "proceed." (Doc. 49). Professor Reyes then had to file an Expedited Motion to Compel (before the discovery deadline) to basically enforce the District Court's Order. (Doc. 50). FAMU opposed the Motion (Doc. 52). Professor Reyes had to seek leave to file a reply. (Doc. 56). The leave to file a reply was granted. (Doc. 56). The Motion to Compel was granted on **June 13, 2024**.

Regarding FAMU's failure to make President Robinson available for deposition after an Order to do so, the District Court Magistrate Judge stated:

```
12          I don't understand why the parties can't figure out

13    dates.  I don't understand why, when I order a deposition, it's

14    not complied with, frankly, in my mind in a timely fashion it

15    requires.  I mean, so some of what you're saying, Ms. Reyes,

16    I'm agreeing with, because then it requires an order from me

17    setting a date.  You know, I think that's almost ridiculous

18    that it requires that.
```

(Doc. 140 at 17:12-18). Despite his voiced acknowledgment that FAMU disobeyed his Order, the Magistrate Judge declined to award Professor Reyes reasonable expenses pursuant to Rule 37 when he granted Professor Reyes's Motion to Compel the deposition of President Larry Robinson as noticed. (Doc. 64 at 3, ¶ 2).


### III.   THE DISTRICT COURT ERRED WHEN IT DENIED PROFESSOR REYES'S REQUEST TO RE-OPEN DISCOVERY AND SUMMARY JUDGMENT AFTER FAMU FILED ITS ANSWER WITH THIRTEEN AFFIRMATIVE DEFENSES ONCE THE DISCOVERY DEADLINE AND THE DEADLINE TO SUBMIT MOTIONS FOR SUMMARY JUDGMENT PASSED.

In its Brief, FAMU incorrectly states that Professor Reyes "did not assert that FAMU's Answer 'violated the general rules of pleading in Federal Rule of Civil Procedure 8(b).' and that issue is not properly before this Court on appeal." (F.B. at 24). On **October 15, 2024**, Professor Reyes specifically raised the Rule 8(b) violations in her Motion to Strike Defendant's Affirmative Defenses. (Doc. 112 at 3-5). Professor Reyes asked the District Court to "strike the inappropriate denials and

claims of lack of knowledge and deem them admitted." (*Id.* at 4-5) (citing *Mesirow v. Duggan*, 240 F.2d 751, 756 (8th Cir. 1957), *cert. den. sub nom. Duggan v. Green*, 355 U.S. 864 (1957)).

Regarding the thirteen (13) affirmative defenses, Professor Reyes stated:

> In its Answer and Affirmative Defenses, Defendant reserved "the right to assert additional or other defenses or matters in avoidance after discovery progresses in this case." (Doc. 97 at 33). However, discovery closed on May 31, 2024. (Doc. 26 at 1). Therefore, this is not a case where the record has not been developed through discovery. Yet, Defendant asserted bare-bone conclusory allegations for its thirteen (13) Affirmative Defenses without alleging facts in support of each one. The lack of factual support interfered with the legal research Plaintiff could have done had she received notice of the facts behind the Affirmative Defenses. Defendant did not give Plaintiff "fair notice" of the nature of the defenses and the grounds upon which they rest. The defenses are stated so generally that they constitute no notice of the defenses that Defendant will raise at trial. As such, they should be stricken. *EEOC v. O'Reilly Auto.*, 2020 U.S. Dist. LEXIS 266330, at *7. Additionally, they should be stricken because, otherwise, Plaintiff will be severely prejudiced, including because Plaintiff, at this point in the case, cannot conduct discovery or file a motion for summary judgment. *See Ayers v. Consol. Constr. Servs. of SW Fla., Inc.*, No. 2:07-cv-123-FtM-29DNF, 2007 U.S. Dist. LEXIS 86596, at *1 (M.D. Fla. Nov. 26, 2007).

(Doc. 112 at 6). At the time when the District Court was considering Professor Reyes's Motion to Strike, there was also her pending Time-Sensitive Motion to Re-open Discovery and Summary Judgment, which she filed on **October 2, 2024**. (Doc. 105).

On **June 18, 2024**, during the hearing on Professor Reyes's Expedited Short-

Form Discovery Motion for Extension of Discovery Deadline and Dispositive and Daubert Motions Deadline if Necessary (Doc. 51), the Magistrate Judge questioned FAMU's counsel about extending the discovery deadline to conduct depositions and FAMU's counsel acknowledged the difficulties posed by the District Court's failure to rule on the pending Motion to Dismiss. FAMU's counsel stated:

```
11          MS. REINER:  Well, Your Honor, I mean, that's
12   difficult to answer because, right now, we don't know what the
13   Court is going to do with respect to the motion to dismiss,
14   because at this point, we've asked for a motion to dismiss with
15   prejudice based on the fact that it was dismissed two times
16   previously.  The Court -- you know, it could feasibly go away.
17   I'm not saying that it will.  And we have no idea when the
18   Court may issue its -- issue its order, and if it doesn't go
19   away, if it's not granted, then we would be responsible for
20   filing that answer and affirmative defenses.
21          So I think, just as a practical matter, the parties
22   are left at this juncture with, you know, a set of
23   circumstances that say, What if, and I don't know that I have
24   the responses or the answers.
```

(Doc. 140 at 26:11-24). FAMU's counsel also stated, regarding the future filing of an Answer and Affirmative Defenses:

```
1    answer and affirmative defenses, I anticipate that she would
2    seek to potentially depose individuals with respect to those
3    affirmative defenses, and I'm not sure what the Court would do
4    in terms of the timeline with respect to trial and any number
5    of things --
```

(*Id.* at 27:1-5). The Magistrate Judge responded to FAMU's counsel's reluctance to agree to extend the deadline to conduct depositions at that time:

```
14          But I will say that if an affirmative defense is put
15    in play in this case and if discovery is open for that limited
16    purpose, that doesn't mean the trial or anything else is going
17    to move, and in this situation, it could be that you're on a
18    very short timeline for this discovery, and it's going to be,
19    frankly, without much regard to your witnesses' schedules, and
20    they will be ordered to conduct depositions on a very short
21    timeline and able to prepare the case for trial appropriately.
22          So it may be that the depositions being conducted now
23    are much more -- much better for their schedule than if, you
24    know, in September or October, you know, I order depositions to
25    occur within 14 days.
```

(*Id.* at 27:14-25). The Magistrate Judge correctly understood that there would be need for discovery after FAMU filed its Answer and Affirmative defenses, especially if FAMU stated failure to state a cause of action as an affirmative defense; however, counsel for FAMU responded that FAMU would not plead that affirmative defense if the Court denied the Motion to Dismiss because that was "part of the basis of the

motion to dismiss":

```
12        THE COURT:  Just keep that in mind regarding your
13   affirmative defenses, too.  You know, I wouldn't -- not that
14   it's even an affirmative defense, but I wouldn't file the
15   affirmative defense of the claim fails to state, you know, a
16   cause of action, because now you've opened up all of discovery.
17   You know, and it's also not an affirmative defense, so you
18   shouldn't file it anyway.  But I'm just saying, you know, you
19   do that and, then, here we are.
20        MS. REINER:  Well, I think, you know, I think at this
21   point, Your Honor, that's -- you know, that's part of the basis
22   of the motion to dismiss.  So if the Court were to come back
23   and say, "No, we're proceeding on the complaint as it stands,"
24   you know, then that's not something we would be -- we would be
25   pleading as an affirmative defense.  But I absolutely take your
```

(*Id.* at 31:12-25).

FAMU gained unfair advantage in the court below. By making a bare-bones assertion that it filed its Second Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),[23] FAMU effectively received an indefinite extension of time to file an answer. Professor Reyes filed and served her Second Amended Complaint on **October 9, 2023**, and FAMU filed its Answer and thirteen (13) Affirmative Defenses

---

[23] Fed. R. Civ. P. 12(a)(4). At the beginning of its Second Motion to Dismiss, Defendant requested dismissal with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6); however, its entire argument was premised on the second category of *Weiland*'s "shotgun" pleading categories. (Doc. 35 at 2-10).

on **September 23, 2024**. (Doc. 97). By that time, the deadlines for discovery and summary judgment had passed. Then, on **November 1, 2024**, the District Court denied Professor Reyes's Time-Sensitive Motion to Reopen Discovery and Summary Judgment. (Doc. 125). The District Court piggybacked its denial on its prior order (Doc. 72) without addressing Professor Reyes's argument that she was "severely prejudiced" by the timing of Defendant's Answer and Affirmative Defenses after the discovery and dispositive motions deadlines. (Doc. 105 at 3).

The issues raised in this appeal are intertwined in the overall management of the case to Professor Reyes's detriment. Whenever the District Court had discretion regarding findings of "good faith" and "diligence" it found in favor of FAMU and against Professor Reyes, often based on erroneous facts and inferences tilted against Professor Reyes. The record in the case below, as in this appeal, demonstrates Professor Reyes's diligence in the face of extremely difficult circumstances caused by FAMU's bad actors. The findings of lack of diligence were highly subjective and not supported by the facts of the case.[24]

FAMU raises that "during the pendency of this litigation, the District Court Judge was managing two federal court dockets in the Orlando Division and the

---

[24] FAMU got away with obstructive and dilatory tactics, factual misrepresentations in court filings that the District Court readily credited to Professor Reyes's detriment, and even wrongfully taking Professor Reyes's tenured position and income during the discovery phase of the lawsuit.

Jacksonville Division, with hundreds of cases on each docket." Professor Reyes understands how difficult it is to manage a court's docket.[25] Professor Reyes understands that we all deal with many duties during the same 24-hour day.[26] She did not ascribe lack of diligence or bad faith to the District Court's case management. However, she expected that the District Court would impart justice and assess how its case management detrimentally impacted Professor Reyes in this case and rule accordingly. Professor Reyes's physical incapacitation was beyond her control as the Court stated. The timing of the Court's ruling on the pending Motion to Dismiss and the late Answer and Affirmative Defenses were also beyond Professor Reyes's control. Considering all the circumstances, it was an abuse of discretion for the

---

[25] As FAMU cited in its Brief, Professor Reyes worked as a federal law clerk. (F.B. at 3, n.2). She understand the work that happens in chambers in a busy federal court.

[26] FAMU dismissively compared the work that occupies the District Court Judge to the work that Professor Reyes has been doing in one case in the District Court. When Professor Reyes filed her lawsuit *pro se*, she was also handling a highly demanding full-time job as a law professor. She had been out of legal practice for nearly two decades. After Professor Reyes's employment was wrongfully terminated, FAMU and its counsel knew that Professor Reyes started handling several internal and administrative proceedings meant to exhaust her and make her give up seeking review of her wrongful termination. They also knew that she was dealing with medical circumstances possibly caused or exacerbated by the tremendous stress inflicted by FAMU's additional wrongful actions. FAMU has roughly ten (10) lawyers (inside counsel and outside counsel in at least three different law firms) working against providing review of Professor Reyes's wrongful termination. Professor Reyes is also handling those matters alone in administrative and state proceedings (agency, trial court, and appellate court).

District Court not to grant the discrete relief that Professor Reyes requested with diligence and good cause.[27]

## **CONCLUSION**

Based upon the foregoing, this Honorable Court should reverse the ruling below and remand this case for further proceedings to be reassigned to a different district court judge and magistrate judge pursuant to the Court's inherent power and 28 U.S.C. § 2106.[28]

Dated this 29th day of August, 2025.

Respectfully submitted,

/s/ *Maritza Reyes*
Maritza Reyes, Esq., *Pro Se*
P.O. Box 5102
Winter Park, FL 32793
mreyesclaim@gmail.com
305-308-8200
*Plaintiff-Appellant*

---

[27] Some of the sequels of that medical incapacitation remain; however, now, Professor Reyes is learning to adjust to her new medical circumstances and doing her best day by day.

[28] *See also United States v. Remillong*, 55 F.3d 572, 577-78 (11th Cir. 1995) (remanding the case to the Chief Judge of the Middle District of Florida to reassign to a different district judge for further proceedings consistent with the opinion).

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that this brief complies the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B). It is typed in proportionally spaced Times New Roman style with a 14-point pitch and complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), as it contains 6493 words according to Microsoft Word Version 2503.

*/s/ Maritza Reyes*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 29, 2025, I electronically filed the foregoing brief with the Clerk of the Court by using the CM/ECF system, which will send notice to Defendant-Appellee's attorneys.

*/s/ Maritza Reyes*